1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  701 B Street, Suite 1700
   San Diego, California  92101
3  (619) 338-1100
   (619) 338-1101 (fax)
4
   CASEY GERRY SCHENK FRANCAVILLA          WOLF HALDENSTEIN ADLER
5    BLATT & PENFIELD LLP                    FREEMAN & HERZ LLC
   GAYLE M. BLATT                          ADAM J. LEVITT
6  110 Laurel Street                       55 West Monroe Street, Suite 1111
   San Diego, California 92101             Chicago, Illinois 60603
7  (619) 238-1811                          (312) 984-0000
   (619) 544-9232 (fax)                    (312) 984-0001 (fax)
8
   *Plaintiffs' Liaison Counsel*           ROBBINS GELLER RUDMAN & DOWD,
9                                          LLP
   STRANGE & CARPENTER                     PAUL J. GELLER
10 BRIAN R. STRANGE (103252)               120 E. Palmetto Park Road, Suite 500
   12100 Wilshire Boulevard, Suite 1900    Boca Raton, Florida 33432
11 Los Angeles, California 90025           (561) 750-3000
   (310) 207-5055                          (561) 750-3364 (fax)
12 (310) 826-3210 (fax)
                                           BARNOW AND ASSOCIATES, P.C.
13 LAW OFFICES OF DAVID A. MCKAY LLC       BEN BARNOW
   DAVID A. MCKAY                          One North LaSalle Street, Suite 4600
14 555 North Point Center East, Suite 400  Chicago, Illinois 60602
   Alpharetta, Georgia 30022               (312) 621-2000
15 (678) 366-5180                          (312) 641-5504 (fax)
   (678) 366-5001 (fax)
16                                         *Plaintiffs' Steering Committee*

17
                    UNITED STATES DISTRICT COURT
18
                   SOUTHERN DISTRICT OF CALIFORNIA
19

20 In re: SONY GAMING NETWORKS AND    )  MDL No.: 3:11-md-02258-AJB-MDD
   CUSTOMER DATA SECURITY BREACH      )
21 LITIGATION,                        )  CLASS ACTION
   _____ )
22                                    )  PLAINTIFFS' OPPOSITION TO
                                      )  DEFENDANTS' MOTION TO DISMISS
23 This Document Pertains To: All Actions )  CONSOLIDATED CLASS ACTION
                                      )  COMPLAINT
24                                    )
                                      )  Date: August 10, 2012
25                                    )  Time: 1:30 p.m.
                                      )  Judge:  The Honorable Anthony J. Battaglia
26                                    )  Courtroom:   12
                                      )
27 _____ )

28

                                                              {00045002.V1}

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................3

        A.      The PS3 And PSP Systems .........................................................................3

        B.      Plaintiffs And The Other Class Members Provided Personal Information
                To Sony ........................................................................................................3

        C.      Sony Promised To Safeguard Its Customers' Personal Information ...........4

        D.      The Data Breach And Sony's Failure To Disclose .....................................5

        E.      Sony Knew, Or Should Have Known, Its Security Was Inadequate ...........6

        F.      Sony's Misconduct Harmed Plaintiffs And The Other Class Members ......7

III.    LEGAL STANDARDS ..........................................................................................8

IV.     ARGUMENT ..........................................................................................................8

        A.      Plaintiffs Have Standing To Assert Claims Against All Defendants ..........8

        B.      Plaintiffs Sufficiently Plead Negligence ..................................................12

                1.      Plaintiffs Allege A Cognizable Injury ...........................................12

                2.      The Allegations Of Sony's Breach Of Duty Satisfy *Iqbal* And
                        *Twombly* .........................................................................................15

        C.      Plaintiffs Properly Have Pled Their UCL, FAL, And CLRA Claims .......17

                1.      California Law Governs ..................................................................17

                2.      Plaintiffs Have Alleged Injury Under The UCL, FAL, And CLRA....18

                3.      Plaintiffs Adequately Have Alleged Defendants' Violations Of The
                        UCL, FAL, And CLRA ...................................................................19

                        a.      Plaintiffs Allege Sony's Representations Are Likely To
                                Deceive ...............................................................................20

                        b.      Plaintiffs Alleged Reliance .................................................21

                4.      Plaintiffs Are Entitled To Injunctive Relief And Restitution .........22

                5.      The Transactions At Issue Are Actionable Under The CLRA ........23

        D.      Plaintiffs State A Claim Under The California Database Breach Act ........24

                1.      Sony Failed To Notify Of The Breach In The Most Expedient
                        Time Possible And Without Unreasonable Delay ..........................24

2.   Plaintiffs Properly Allege Theft Of Personal Information..........................25

3.   Plaintiffs Properly Allege That They Were Injured By Sony's Violation Of The Breach Act ......................................................................25

4.   Plaintiffs Allege Statutory Standing Under The Breach Act ....................26

E.   Plaintiffs Adequately Have Pled Unjust Enrichment...............................................26

F.   Plaintiffs Sufficiently Have Pled Their Bailment Claim ........................................27

IV.   **CONCLUSION** ..............................................................................................................29

TABLE OF AUTHORITIES

PAGE

**CASES**

*A & M Produce Co. v. FMC Corp.*,
 135 Cal. App. 3d 473 (1982) ........................................ 14

*Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*,
 69 F.3d 381 (9th Cir. 1995) ........................................ 24

*Allen v. Hylands, Inc.*,
 No. 12-01150, 2012 U.S. Dist. LEXIS 61606  (C.D. Cal. May 2, 2012) ................... 16, 17

*Allison v. Aetna, Inc.*,
 No. 09-2560, 2010 U.S. Dist. LEXIS 22373 (E.D. Pa. Mar. 9, 2010) ............................. 10

*Amburgy v. Express Scripts, Inc.*,
 671 F. Supp. 2d 1046 (E.D. Mo. 2009) ........................................ 10, 12

*Anderson v. Hannaford Bros. Co.*,
 659 F.3d 151 (1st Cir. 2011) ........................................ 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................ 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................ 27

*Bly-Magee v. California*,
 236 F.3d 1014 (9th Cir. 2001) ........................................ 19

*Central Ariz. Water Conservation Dist. v. United States EPA*,
 990 F.2d 1531 (9th Cir. 1993) ........................................ 11

*Claridge v. RockYou*,
 785 F. Supp. 2d 855 (N.D. Cal. 2011) ........................................ 1, 13

*Cooper v. Picket*,
 137 F.3d 616 (9th Cir. 1997) ........................................ 20

*Datel Holdings Ltd. v. Microsoft Corp.*,
 712 F. Supp. 2d 974 (N.D. Cal. 2010) ........................................ 11

*Dinosaur Dev., Inc. v. White*,
 216 Cal. App. 3d 1310 (1989) ........................................ 26

*Doe v. AOL LLC*,
 719 F. Supp. 2d 1102 (N.D. Cal. 2010) ........................................ 18

*Easter v. Am. West Fin.*,
 381 F.3d 948 (9th Cir. 2004) ........................................ 9

*Fairbanks v. Superior Court*,
 46 Cal. 4th 56 (2009) ........................................ 17

*Fireside Bank v. Superior Court*,
    40 Cal. 4th 1069 (2007) ............................................................................................... 21

*First Nationwide Savings v. Perry*,
    11 Cal. App. 4th 1657 (1992) ..................................................................................... 26

*Freeman v. Time Inc.*,
    68 F.3d 285 (9th Cir. 1995) ........................................................................................ 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................................... 1, 11

*Goosby v. Ridge*,
    No. 09-CV-02654-RBB, 2012 WL 1068881 (S.D. Cal. Mar. 29, 2012) ...................... 24

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June
    25, 2010) ..................................................................................................................... 10

*Hinton v. Heartland Payment Sys., Inc.*,
    No. 09-594(MLC), 2009 U.S. Dist. LEXIS 20675 (D.N.J. Mar. 16, 2009) .................. 10

*In re Apple In-App Purchase Litig.*,
    No. 5:11-CV-1758 EJD, 2012 U.S. Dist. LEXIS 47234 (N.D. Cal. Mar. 31,
    2012) ............................................................................................................... 3, 26, 27

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................................................... 9

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................... 23

*In re Facebook PPC Adver. Litig.*,
    No. 5:09-cv-03043, 2010 U.S. Dist. LEXIS 136505 (N.D. Cal. Dec. 15, 2010)............ 21

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................................ 19

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    613 F. Supp. 2d 108 (D. Me. 2009) ........................................................................... 15

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20,
    2011) ........................................................................................................................ 9, 19

*In re Sony PS3 Other OS Litig.*,
    No. C10-1811 RS, 2011 U.S. Dist. LEXIS 141295 (N.D. Cal. Dec. 8, 2011) ..... 11, 14, 19

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ........................................................................................ 17, 21

*Jacobellis v. State Farm Fire & Cas. Co.*,
    120 F.3d 172 (9th Cir. 1997) ...................................................................................... 24

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ................................................................................. 14

*Johns v. Bayer Corp.*,
    No. 09cv1935, 2012 U.S. Dist. LEXIS 13410 (S.D. Cal. Feb. 3, 2012) ......................... 20

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ............................................................................. 20

*Key v. DSW, Inc.*,
    454 F. Supp. 2d 684 (S.D. Ohio 2006) ....................................................... 10

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ........................................................... 28, 29

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139, 1140 (9th Cir. 2010) ....................................................... 9, 10

*Krottner v. Starbucks Corp.*,
    406 Fed. Appx. 129 (9th Cir. 2010) .......................................................... 12

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ............................................................. 11, 18, 22, 23

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ..................................................................... 26

*Low v. LinkedIn Corp.*,
    No. 5:11-cv-01468-LHK, 2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11,
    2011) .................................................................................................. 12

*Lozano v. AT&T Wireless Svcs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ........................................................... 18, 22, 23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 8, 9

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002) ........................................................... 20, 22

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................... 2, 16

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ................................................................... 27

*McKell v. Wash. Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ................................................................. 27

*McLoughlin v. People's United Bank, Inc.*,
    No. 3:08-cv-00944(VLB), 2009 U.S. Dist. LEXIS 78065 (D. Conn. Aug. 31,
    2009) .................................................................................................. 12

*Medina v. County of San Diego,*
   No. 08cv1252 AJB (RBB), 2012 U.S. Dist. LEXIS 41883 (S.D. Cal. Mar. 26,
   2012) ................................................................................................................................ 8

*Metz v. Soares,*
   142 Cal. App. 4th 1250 (2006) ........................................................................................ 13

*Morgan v. AT&T Wireless Servs. Inc.,*
   177 Cal. App. 4th 1235 (2009) ........................................................................................ 22

*N. Am. Chem. Co. v. Superior Court,*
   59 Cal. App. 4th 764 (1997) ............................................................................................ 13

*Niiya v. Goto,*
   181 Cal. App. 2d 682 (1960) ...................................................................................... 27, 28

*Nordberg v. Trilegiant Corp.,*
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ........................................................................... 26

*Olivera v. Am. Home Mortg. Servicing, Inc.,*
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) ........................................................................... 21

*Oracle Corp. v. SAP AG,*
   No. 07-1658 PJH, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) .............................. 26, 27

*Palm Springs-La Quinta Dev. Co. v. Kieberk Corp.,*
   46 Cal. App. 2d 234 (1941) .............................................................................................. 28

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ............................................................................................ 26

*Paz v. California,*
   22 Cal. 4th 550 (2000) ...................................................................................................... 12

*People v. Cohen,*
   8 Cal. 42 (1857) ................................................................................................................ 28

*Pisciotta v. Old Nat'l Bancorp,*
   499 F.3d 629 (7th Cir. 2007) ............................................................................................ 10

*Plascencia v. Lending 1ˢᵗ Mortg.,*
   259 F.R.D. 437 (N.D. Cal. 2009) ..................................................................................... 20

*Reilly v. Ceridian Corp.,*
   664 F.3d 38 (3d Cir. 2011) ............................................................................................... 10

*Richardson v. DSW, Inc.,*
   No. 05-C4599, 2005 WL 2978755 (N.D. Ill. Nov. 3, 2005) ........................................... 28

*RRX Indus., Inc. v. Lab-Con, Inc.,*
   772 F.2d 543 (9th Cir. 1985) ............................................................................................ 15

*Ruiz v. Affinity Logistics Corp.,*
   667 F.3d 1318 (9th Cir. 2012) .......................................................................................... 17

*Ruiz v. Gap, Inc.,*
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ........................................................ 12

*Ruiz v. Gap, Inc.,*
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ...................................................... 28

*Sanders v. Apple Inc.,*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................ 26

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,*
    49 Cal. App. 4th 472 (1996) ...................................................................... 28

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) .................................................................... 24

*Steroid Hormone Prod. Cases,*
    181 Cal. App. 4th 145 (2010) .................................................................... 18

*Stollenwerk v. Tri-West Healthcare Alliance,*
    254 Fed. Appx. 664 (9th Cir. 2007) ........................................................... 12

*Szetela v. Discover Bank,*
    97 Cal. App. 4th 1094 (2002) .................................................................... 14

*Thompson v. Home Depot, Inc.,*
    No. 07cv1058, 2007 U.S. Dist. LEXIS 68918 (S.D. Cal. Sept. 18, 2007) ...................... 19

*Thyroff v. Nationwide Mut. Ins. Co.,*
    864 N.E. 3d 1272 (N.Y. 2007) .................................................................. 28

*Trew v. Volvo Cars of N. Am.,*
    No. CIV-S-05-1379, 2006 U.S. Dist. LEXIS 4890 (E.D. Cal. Feb. 8, 2006) ........... 22, 23

*U.S. Roofing, Inc. v. Credit Alliance Corp.,*
    228 Cal. App. 3d 1431 (1991) .................................................................... 14

*Vasquez v. Superior Court,*
    4 Cal. 3d 800 (1971) ................................................................................ 22

*Walker v. USAA Cal. Ins. Co.,*
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ...................................................... 26

*Warshaw v. Xoma Corp.,*
    74 F.3d 955 (9th Cir. 1996) ...................................................................... 19

*Wash. Mut. Bank, FA v. Superior Court,*
    24 Cal. 4th 906 (2001) ........................................................................... 2, 17

*Webb v. Carter's Inc.,*
    272 F.R.D. 489 (C.D. Cal. 2011) ................................................................. 9

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) .............................................................. 2, 20, 21

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ................................................................ 27

*Windham at Carmel Mountain Ranch Assn. v. Superior Court*,
    109 Cal. App. 4th 1162 (2003) .............................................................. 14

*Wofford v. Apple, Inc.*,
    No. 11-CV-0034, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011) .................. 24

*Yokayama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .............................................................. 20

*Zine v. Chrysler Corp.*,
    600 N.W. 2d 384 (Mich Ct. App. 1999) .................................................... 18

**STATUTES**

Cal. Bus. & Prof. Code
    § 17204 ........................................................................... 18
    § 17535 ........................................................................... 18

Cal. Civ. Code
    § 1670.5 .......................................................................... 14
    § 1761(b) .......................................................................... 23
    § 1770(a) .......................................................................... 23
    § 1780(a) .......................................................................... 18
    § 1798 *et seq.* .................................................................... 2
    § 1798.81.5(d)(1) ............................................................... 2, 25
    § 1798.81.5(d)(1)(C) ............................................................... 2
    § 1798.82(a) ....................................................................... 24
    § 1798.82(h)(3) .................................................................... 25
    § 1798.84(b) .................................................................. 25, 26
    § 1814 ......................................................................... 3, 28
    § 3333 ............................................................................ 13

Cal. Com. Code
    § 2719(2) .......................................................................... 15

Fla. Stat. Ann.
    § 501.202(2) ....................................................................... 17

Tex. Bus & Com. Code Ann.
    § 17.44 ............................................................................ 17

Plaintiffs, individually and on behalf of all others similarly situated, submit this memorandum in opposition to the Motion to Dismiss Consolidated Class Action Complaint (ECF No. 94, "Mot." or "Motion"), filed by Defendants Sony Computer Entertainment America LLC ("SCEA"), Sony Network Entertainment International LLC ("SNEI"), Sony Network Entertainment America Inc. ("SNEA"), Sony Online Entertainment LLC ("SOE"), and Sony Corporation of America ("SCA") (collectively, "Defendants" or "Sony").

## I.   INTRODUCTION

Sony attempts to downplay one of the largest data breaches in history labeling it a mere "intrusion."  The reality is that Sony failed to follow basic industry-standard protocols to safeguard its customers' personal and financial information.  Sony's carelessness caused it to shut down its online services for nearly a month.  Sony ignores these facts, just as it ignores its own "Terms of Service and User Agreement," which mandates the application of California law to all consumer disputes.  In addition to ignoring the allegations in the CAC[1] and its own choice of law provision, it ignores controlling law.  Sony's motion should be denied and discovery should proceed.

*First*, contrary to Sony's reflexive arguments, Plaintiffs have Article III standing and allege far more than the "mere exposure of personal information."  Plaintiffs' Personal Information was stolen, which confers standing.  *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010).[2]  Moreover, for nearly a month, Plaintiffs and the Class were denied access to services they paid for – an obvious economic loss.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184-85 (2000) ("economic and aesthetic harms" are "enough for injury in fact").

*Second*, Sony contends that Plaintiffs' claims for negligence fail because there is no cognizable injury and, remarkably, no allegations of negligent conduct on the part of Sony.  Mot. at 14-15.  Courts such as *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) and *Claridge v. RockYou*, 785 F. Supp. 2d 855 (N.D. Cal. 2011), have flatly rejected or distinguished the same authorities relied on by Sony, finding that actual injury from a security breach was adequately pled.

---

[1]     "CAC," "¶ " and "¶¶ "refer to Plaintiffs' Consolidated Class Action Complaint (ECF No. 78).

[2]     Internal citations and quotations omitted and emphasis in original unless otherwise stated.

Further, as to the factual question of whether Sony owed and later breached a duty of care to Plaintiffs to adequately safeguard their personal information, Sony's own Privacy Policy – promising to take "reasonable measures to protect the . . . security . . . of the personal information collected" – speaks for itself.

*Third*, Sony argues, among other things, that Plaintiffs' California consumer protection law claims must be rejected because California law does not apply, Plaintiffs suffered no injury, and Plaintiffs do not allege actual reliance. Mot. at 16-25. Sony's own "choice of law" provision, however, mandates application of California law to all consumer disputes. California law is clear that in such instances, the contractual choice of law provision applies. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 918 (2001). *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), did not involve a contractual choice of law provision, so it simply does not apply. As noted above, Plaintiffs have alleged various forms of injury. Plaintiffs also plead cognizable deception by Sony in connection with its promises to maintain the security of Plaintiffs' personal information, to permit access to prepaid third-party services through the PlayStation Network ("PSN"), and to permit the use of the PSN. Whether conduct is reasonably "likely to deceive" is a question of fact not proper for a motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

*Fourth*, improperly relying on a report from a California regulatory agency, Sony argues that Plaintiffs' claims under the California Database Breach Act, Cal. Civ. Code § 1798 *et seq.* (the "Breach Act") should be dismissed. Mot. at 25-28. Sony asserts that the agency somehow condones Sony's conduct, while repeating factual arguments at odds with the facts pled in the CAC. Additionally, Sony's purported agency "recommended practices" are outside of the four-corners of the CAC and are not supported by the plain language of the statute. Whether Sony "unreasonably delay[ed]" its notification of a Data Breach is a question of fact. Further, Sony's admission that Plaintiffs' names and passwords were stolen shows that Sony violated the Breach Act. There is no additional requirement that stolen passwords must be for use at a financial institution account. Mot. at 27. Rather, it must only be a "password that would *permit access* to an individual's financial account." Cal. Civ. Code § 1798.81.5(d)(1)(C) (emphasis added). Consumers use the same

1    passwords for online networks and bank accounts, a fact well recognized by the online privacy

2    community. Plaintiffs also sufficiently allege damage under the Breach Act.

3        **Fifth**, Sony claims unjust enrichment is "not an independent cause of action" and is

4    otherwise not well-pled. Mot. at 28-30. Courts routinely reject these arguments. *See, e.g.*, *In re*

5    *Apple In-App Purchase Litig.*, No. 5:11-CV-1758 EJD, 2012 U.S. Dist. LEXIS 47234, at *31-32

6    (N.D. Cal. Mar. 31, 2012). The CAC alleges benefits paid to and accepted by Sony and the

7    deprivation of the full use and value of the products and services Plaintiffs paid for, sufficiently

8    stating a claim for unjust enrichment. Further, the presence of written Terms of Service is not fatal

9    to this claim. *Id.*

10       **Finally**, Plaintiffs' personal information entrusted to Sony is "personal property" under

11   California law. Also, there is no requirement under Cal. Civ. Code § 1814 that the bailee (here,

12   Sony) eventually return the property, as Sony contends. Mot. at 30-31. Sony became a bailee when

13   Plaintiffs provided Sony their personal information for access to online content, and Sony's failure to

14   protect this property makes Sony liable for a claim of bailment.

**II.    STATEMENT OF FACTS**

15   **A.    The PS3 And PSP Systems**

16       Sony develops and markets the PlayStation Portable ("PSP") hand-held device and the

17   PlayStation 3 ("PS3") console. ¶¶ 24, 25. Among the key features of the PS3 and PSP are their

18   ability to let users play games, connect to the Internet, ¶ 26, access the PSN, Qriocity, and Sony

19   Online Entertainment ("SOE") (collectively, "Sony Online Services" or "SOS"), ¶¶ 27-29, and,

20   through the PSN, engage in multiplayer online gaming. ¶ 27. For additional fees, the PSN also

21   allows access to various third party services such as Netflix, MLB.TV, and NHL Gamecenter LIVE

22   ("Third Party Services"). ¶ 31. Many who subscribe to these Third Party Services can only access

23   them through their PSN account. ¶¶ 9-11, 14, 38. As of January 25, 2011, PSN had over 69 million

24   users worldwide, *id.*, and SOE had over 24.6 million users worldwide. ¶ 29.

25   **B.    Plaintiffs And The Other Class Members Provided Personal**
         **Information To Sony**

26       When establishing accounts with PSN, Qriocity, and SOE, Plaintiffs and other Class

27   members were required to provide personally identifying information to Sony, including their

28

names, mailing addresses, email addresses, birth dates, credit and debit card information (card numbers, expiration dates and security codes) and login credentials ("Personal Information"), which Sony stores and maintains on its Network.[3] ¶ 35.  Sony continually monitors and records users' PSN activities, purchases and usage, and maintains this usage data on its Network.  ¶ 36.

Account holders may also create subaccounts for their minor children linked to their primary account.  ¶¶ 11, 37.  For these subaccounts, Sony collects Personal Information about the children, which it then stores and maintains on its Network.  Sony also monitors, tracks, records and retains PSN activities, purchases, and usage on these subaccounts.  *Id.*  In addition, Sony provides the Personal Information that Class members provide when signing up and paying Sony for Third Party Services to those Third Party Services for payment, marketing, and other purposes.  ¶ 38.

**C.    Sony Promised To Safeguard Its Customers' Personal Information**

Defendants SNEA and SNEI, in conjunction with other Defendants, manage the PSN and Qriocity services, monitoring the content delivered to users and tracking users' Personal Information, ¶ 33, just as Sony does with SOE.  ¶ 34.

On April 1, 2011, SCEA transferred its online PSN and Qriocity service operations (including Personal Information) to SNEA.  ¶ 39.  When it did so, Sony also required PSN and Qriocity users to agree to a new "Terms of Service and User Agreement" ("New Agreement"). ¶ 40.  The New Agreement confirmed that the various data collected from PSN and Qriocity users was subject to the terms of SNEA's Privacy Policy.  ¶¶ 41, 42.  The Privacy Policy promises that Sony will "take ***reasonable measures to protect*** the confidentiality, security, and integrity of the personal information collected from our website visitors" and that "Sony Online Services use industry-standard encryption to prevent unauthorized electronic access to sensitive financial information such as your credit card number."  ¶ 42 (emphasis added).  The Privacy Policy also promises that any Personal Information and usage data shared with SCEA will be protected.  ¶ 43.  SCEA also promises to use reasonable measures to protect Personal Information.  ¶ 44.  SOE's similar Privacy Policy applies to all SOE users and assures that SOE will protect users' Personal Information, ¶ 45,

---

[3]    "Network" includes Sony's computer systems, servers, and databases.  ¶ 3.

affirmatively representing that SOE "ha[s] in place reasonable technical and organizational security measures to protect your Personal Information against accidental or intentional manipulation, loss, destruction, or against unauthorized disclosure or access to the information we collect online." *Id.*

### D.   The Data Breach And Sony's Failure To Disclose

Around April 16 or 17, 2011, hackers, aware of Sony's inadequate security safeguards, accessed Sony's Network, stealing the Personal Information of millions of Sony customers, including Plaintiffs and the other Class members ("Data Breach"). ¶ 46. Hackers are nothing new, and companies take standard measures to detect hacker activity. On or about April 17, 2011, Sony discovered that PSN and Qriocity user data had been stolen. ¶ 51. Three days later, Sony took the PSN and Qriocity offline, but did not disclose the reason for the shutdown. Instead, Sony deceptively stated that "[w]e're aware certain functions of PlayStation Network are down. We will report back here as soon as we can with more information." ¶ 52.

Between April 21 and April 25, 2011, while the PSN and Qriocity remained off-line, Sony continued to misrepresent the circumstances of the Data Breach. ¶¶ 54-55, 58. It was not until April 26, 2011, that Sony finally told the public that the Personal Information had been taken. ¶ 59. Shortly thereafter, Sony admitted that its failures "*may have had financial impact on our loyal customers*. We are currently reviewing options and will update you when the service is restored." ¶ 60 (emphasis added). Sony also conceded that "[s]ome games may require access to PSN for trophy sync, security checks or other network functionality and therefore cannot be played offline." *Id*.

Despite these admissions, Sony worked hard to downplay the significance of its failings and delayed disclosing many aspects of the resulting problems. ¶ 61. For example, on or about April 27, 2011, Sony told Class members that no data from SOE's multiplayer online games was compromised, ¶ 62, a position it later reversed when it disclosed the existence of "an issue that warrants enough concern for us to take the service down immediately." ¶ 63. Sony then disclosed, for the first time, that the names, addresses, e-mail addresses, gender, birthdates, phone numbers, log-in names, and hashed passwords of 24.6 million users registered on SOE had been taken on or around April 16, 2011. ¶ 64.

E.      Sony Knew, Or Should Have Known, Its Security Was Inadequate

Sony knew or should have known that its security systems and technologies left its Network vulnerable to attack.  ¶ 69.  Sony's Network had been previously compromised.  For example, in May 2009, unauthorized copies of certain of Sony's customers' credit cards were emailed to an outside account.  ¶ 70.  In January 2011, hackers compromised the popular PS3 game *Modern Warfare 2* rendering it unplayable on the PSN.  *Id.*

In late 2010 and early 2011, a PS3 user successfully "jailbroke" his PS3 console and posted instructions for others to do the same.  Jailbreaking allowed him to modify his console so he could use it with other operating systems.  ¶ 72.  Although this user did nothing wrong, Sony sued him to chill others from doing the same.  Outraged, the Internet activist group known as "Anonymous" warned in online, very public postings: "You have abused the judicial system in an attempt to censor information on how your products work . . . Now you will experience the wrath of Anonymous. You saw a hornet's nest and stuck your [expletive] in it. You must face the consequences of your actions, Anonymous style . . . ***Expect us***."  ¶ 74 (emphasis added).  Unfazed, Sony did nothing to update its inadequate protocols or otherwise implement adequate safeguards.  ¶ 75.  In a May 1, 2011, admission, Sony Corporation Chief Information Officer Shinji Hasejima conceded that Sony's Network was not secure at the time of the Data Breach ***and that the attack was a "known vulnerability*** ."  ¶ 76 (emphasis added).

Sony never implemented appropriate security measures or took adequate measures after detecting the breach.  ¶ 77.  Sony failed to maintain adequate backups and/or redundant systems; failed to encrypt data or establish adequate firewalls to handle a server intrusion contingency; failed to provide prompt and adequate warnings of security breaches; and unreasonably delayed bringing SOS back online after the massive Data Breach.  ¶ 79.  As a leader in the computer technology industry, Sony implemented and maintained online security for its own information that was consistent with industry standards, but did not do so for its customers.  ¶ 80.  While investing significant resources, including firewalls, debug programs, and IP address limitations, to protect its own confidential proprietary corporate and programming information, Sony failed to incorporate minimally sufficient industry standards to safeguard its customers' Personal Information.  ¶¶ 81, 82.

Sony's misconduct deviated from widespread industry practice and standards that require one who collects payment card information to install and maintain a firewall. ¶ 83. Sony's practices for encrypting Personal Information have been described by technology security experts as "reckless and ridiculous." Experts have criticized Sony's practices, noting, "even security books from the '80s were adamant about encrypting passwords at the very least." ¶ 84. At last, even Sony admits its Network security failed to meet even minimum industry standards. ¶ 85.

## F.   Sony's Misconduct Harmed Plaintiffs And The Other Class Members

During a press conference on May 1, 2011, Sony's Hirai recognized the harm Sony's misconduct caused to Plaintiffs and the other Class members, stating: "Again we like to offer our deepest and sincere apologies for potentially compromising customer data as well as causing great concern and making services unavailable for an extended period of time." ¶ 101.

Sony was grossly unprepared for the Data Breach. Because of the Sony's carelessness, Sony was forced to shut down the PSN and Qriocity for almost a month while it conducted a systems audit to determine the cause of the Data Breach. ¶ 97. Meanwhile, SOE remained offline for more than two weeks. During this prolonged downtime, Plaintiffs and the other Class members were unable to access PSN, Qriocity, and SOE, unable to purchase "add-ons" with their virtual wallets, unable to play multi-player online games with others, and unable to use online services available through the PSN, Qriocity or SOE. Plaintiffs and the other Class members were also unable to access and use prepaid Third Party Services. *See* ¶¶ 9-11, 14, 98. This was an unprecedented service interruption that denied Class members use of services and hardware for which they paid. ¶ 99.

Now, Class members' Personal Information is in the hands of cyber-criminals.[4] While credit card companies offer protection against unauthorized charges, the process is long, costly, and restricting. ¶ 94. To make those services most effective, immediate notice of a breach is essential. Rather than provide immediate notice, Sony delayed while it affirmatively concealed vital information about the Data Breach for several days. *Id.*

---

[4]     The Personal Information can be used for identity theft, to harass or stalk Class members and to "spear phish," where details of a person's usage data is used to tailor a "phishing" message that looks authentic but is designed to obtain other account information, such as financial information. ¶¶ 95-96.

Additionally, on October 12, 2011, Sony disclosed that from October 7-11, 2011, intruders staged a massive attempt to access user accounts on the PSN and other online entertainment services. ¶ 106.   In response, Sony locked approximately 93,000 user accounts whose identities and passwords were successfully obtained during that intrusion.  *Id.*

While ultimately admitting its negligence and wrongdoing, Sony has not adequately compensated Plaintiffs and other Class members.  On April 30, 2011, Sony announced that it would only offer PSN and Qriocity users some identity theft protection service, certain free downloads, and online services, and "will consider" helping customers who have to be issued new credit cards.  ¶ 66. On May 12, 2011, Sony reluctantly announced that it would offer SOE users a form of identity theft protection, one month of service, and certain in-game bonuses and game "currency."  ¶ 67.  Sony's attempts to compensate its PSN, Qriocity, and SOE customers for damages arising from its misconduct are inadequate.  ¶ 68.

## III.   LEGAL STANDARDS

This Court recently articulated the standard of review for a motion to dismiss under Rule 12(b)(6).  *Medina v. County of San Diego*, No. 08cv1252 AJB (RBB), 2012 U.S. Dist. LEXIS 41883, at *12-14 (S.D. Cal. Mar. 26, 2012).  The CAC survives dismissal under these standards.

## IV.   ARGUMENT

### A.   Plaintiffs Have Standing To Assert Claims Against All Defendants

The Article III standing requirements of injury-in-fact, traceability, and redressability are satisfied at the pleading stage by general factual allegations of injury resulting from the defendant's conduct.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here, Plaintiffs had their Personal Information compromised and their access to the devices and services for which they paid, materially impeded (injury-in-fact) as a result of Sony's failure to provide adequate network security.  This resulted in the Data Breach that affected all SOS customers (the injury is traceable), and this Court can afford relief to Plaintiffs and the other Class members by awarding them damages and equitable relief (grievances can be redressed).  ¶¶ 7-14, 53, 59 -60, 68, 94 -101, 127-128, 137-138, 150-151, 162, 167-168, 180.  Unlike in *Lujan*, Plaintiffs here do not allege a "generally

1    available grievance."  Rather, because Plaintiffs' own Sony devices and pay to use SOS,[5] Sony's

2    failure to provide adequate security and the month-long SOS shutdown injured them in a "concrete

3    and personal way" such that they have a sufficient "personal stake in the outcome" of litigation to

4    confer Article III standing to pursue their claims.  ¶¶ 94-95, 97-98; *see Lujan*, 504 U.S. at 581.

5            Sony's arguments to the contrary are without merit.  First, Sony's attempt to insulate two

6    defendants – SOE and SCA (Mot. at 7) – fails, because Plaintiffs have alleged that all Defendants

7    acted together by contributing to Sony's failure to secure its Network, leading to a common data

8    breach.[6]  ¶¶ 3-4, 21.  Plaintiffs' allegations are thus sufficient against all Defendants.

9            Second, Sony contends that "exposure of personal information alone does not constitute

10   injury-in-fact for purposes of Article III standing."  Mot. at 8.  Not so.  A compromise of personal

11   information due to a data breach is Article III injury, a ***point confirmed by the very case upon which***

12   ***Sony relies***.  *See Krottner*, 628 F.3d at 1140 (holding that plaintiffs "whose personal information has

13   been stolen but not misused, have suffered an injury sufficient to confer standing under Article III,

14   Section 2 of the U.S. Constitution").[7]

15

16   [5]    It makes no difference whether Plaintiffs "paid good money" for the devices as every
      Plaintiff was injured by the nearly month-long intentional disruption by Sony of Plaintiffs' use of
17   SOS and the functions of their devices dependent upon such services.  *Compare Webb v. Carter's
      Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (majority of plaintiffs, regardless of purchase or
18   acquisition, suffered no adverse effect from toxicants in children's clothing "no tag" clothing label).

19   [6]    The cases Sony relies upon are inapposite.  Here, Plaintiffs' and other Class members'
      injuries are traceable to decisions made throughout the Sony corporate family and confirmed by
20   Sony's Japan-based corporate parent.  *See* ¶¶ 21, 101; *c.f.  Easter v. Am. West Fin.*, 381 F.3d 948,
      961 (9th Cir. 2004) ("Here, no named plaintiff can trace the alleged injury in fact, payment of
21   usurious interest rates, to all of the Trust Defendants, but only to the Trust Defendant that holds or
      held that plaintiff's note. As to those trusts which have never held a named plaintiff's loan, Borrowers
22   cannot allege a traceable injury and lack standing."); *In re Digital Music Antitrust Litig.*, 812 F.
      Supp. 2d 390, 417-20 (S.D.N.Y. 2011) (where defendant was merely corporate parent without any
23   role in colluding on prices, claim could not be stated based on corporate parent relationship alone).
      Furthermore, it is not exceedingly difficult for each Defendant, including SCA, to respond to the
24   complaint.  (*See* Mot. at 7).  SCA can respond by explaining its role in Sony's overall network
      security.  *Cf. In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS
25   106865, at *27 (N.D. Cal. Sept. 20, 2011) (noting it was "exceedingly difficult, if not impossible"
      for lumped "Mobile Industry Defendants" to respond to allegations regarding exploitation of private
26   information caused by exploits in mobile apps where app developers or apps themselves were not
      also specified).

27   [7]    *Krottner* is not dependent on theft of social security numbers as Sony suggests.  Rather, the
28   Ninth Circuit repeatedly referred to "personal data" and increased risks of identity theft.  628 F.3d at

Sony's characterization of Plaintiffs' injuries as "conjectural or hypothetical," (Mot. at 9), is equally wrong.  In *Krottner*, the Ninth Circuit noted that "for example, if no laptop had been stolen, and [p]laintiffs had sued based on the risk that it would be stolen at some point in the future – we would find the threat far less credible."  628 F.3d at 1143.  Here, however, Plaintiffs allege, and Sony has ***admitted***, that the Data Breach occurred and that Sony's Network failed to meet minimum security standards.  ¶¶ 3, 46, 51, 76, 85, 101.

Sony's other cases are either factually distinguishable or conflict with *Krottner*.  *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 44 (3d Cir. 2011) ("there is no evidence that the intrusion was intentional or malicious. . . . Indeed, no identifiable taking occurred; all that is known is that a firewall was penetrated.").[8]  In contrast, here, Sony has ***admitted*** its misconduct (e.g. failure to meet industry standards) and apologized "for potentially compromising customer data as well as causing great concern and making services unavailable for an extended period of time."  ¶ 101.

Furthermore, Plaintiffs and other Class members have suffered more than just "exposure of personal information."  They also were injured by Sony's nearly month-long SOS shutdown, loss of use of (thereby diminishing the value of) their Sony hardware, of which access to the PSN is an

---

1140.  Plaintiffs' and other Class members' Personal Information here is precisely the sort of personal data that, when compromised, subjects a person to increased risk of identity theft.  *See id.* at 1143 ("Plaintiffs-Appellants have alleged a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data . . . Plaintiffs-Appellants have sufficiently alleged an injury-in-fact for purposes of Article III standing."); ¶¶ 4, 9-14.

[8]   *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1052 (E.D. Mo. 2009) (named plaintiff "does not claim that his personal information has in fact been stolen and/or his identity compromised"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006) (conflicts with and predates *Krottner*, and, furthermore, criticized by Seventh Circuit in *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) ("[w]e are not persuaded by the reasoning of [*Key* and others]. As many of our sister circuits have noted, the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions.")(citations and footnotes omitted)); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *24 (S.D.N.Y. June 25, 2010) (steel boxes carrying backup tapes containing personal data were lost in transit, but no indication that tapes were specifically stolen or data thereon accessed); *Allison v. Aetna, Inc.*, No. 09-2560, 2010 U.S. Dist. LEXIS 22373, at *19-21 (E.D. Pa. Mar. 9, 2010) (no indication plaintiff's personal information accessed); *Hinton v. Heartland Payment Sys., Inc.*, No. 09-594(MLC), 2009 U.S. Dist. LEXIS 20675 at *1 (D.N.J. Mar. 16, 2009) (dismissing *pro se* "rambling, eighteen-page complaint").

integral part,[9] as well as their loss of use of pre-paid SOS and Third Party Services.  ¶¶ 53, 94-100.  These losses are direct financial injuries to Plaintiffs and other Class members, and such economic losses have always conferred Article III standing.  *See Friends of the Earth*, 528 U.S. at 184 ("economic and aesthetic harms" are "enough for injury in fact").[10]

Third, Sony suggests there is no causal connection between the misconduct alleged (Sony's failure to provide adequate security) and Plaintiffs' and other Class members' resulting injuries.  Plaintiffs, however, have plainly pled not only that it was Sony's inadequate network security that enabled the Data Breach, but also that Sony knew its security was inadequate, experienced other Network breaches, and failed to implement fixes until after the Data Breach and ensuing SOS system shutdown.  ¶¶ 7-8, 47, 53, 59, 69-85.  Thus, Plaintiffs, therefore, have alleged a causal connection between Sony's conduct and the various injuries-in-fact Plaintiffs and other Class members sustained as a direct result of that misconduct.

---

[9]     Sony's attempt to separate the PSN from the PS3 or PSP is misguided, as the online functionality of these hardware devices is a key feature that makes them valuable to consumers.  *See Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 981, 997 (N.D. Cal. 2010) (concluding that the PS3 with PSN, along with its primary competitor, the Xbox 360 console with Xbox Live multiplayer gaming service, constitute a distinct market for "Multiplayer Online Dedicated Gaming Systems," further defined as the "specific market for dedicated gaming systems with a meaningful capacity for online multiplayer gaming.");  *see also Sony Comp. Enter. Am. LLC v. Hotz, et al.*, No. 3:11cv167 (N.D. Cal.) Compl. (ECF No. 1) ¶ 20 ("Chief among the many products SCEA sells is the PS3 System. . .The PS3 System also features PlayStation Network, an entertainment network that supports online gameplay and PS3 System connectivity and through which SCEA sells downloadable game content, movies and other digital content to the Internet.").  Sony's citation to *In re Sony PS3 Other OS Litigation*, presently on appeal, is equally misplaced, because, in that case, plaintiffs' continued access to the PSN "was entirely at the discretion of the user . . . The choice may have been a difficult one for those who valued both the Other OS feature and access to the PSN, but it was still a choice."  *In re Sony PS3 Other OS Litig.*, No. C10-1811 RS, 2011 U.S. Dist. LEXIS 141295, at *9 (N.D. Cal. Dec. 8, 2011).  Here, Plaintiffs and other Class members had no choice of whether to fully use the products and services (like downloaded games or other third party services) for which they paid money.

[10]     *See also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) ("Notably, lost money or property—economic injury—is itself a classic form of injury in fact."); *Central Ariz. Water Conservation Dist. v. United States EPA*, 990 F.2d 1531, 1537 (9th Cir. 1993) ("Pecuniary injury is clearly 'a sufficient basis for standing.'").

### B.       Plaintiffs Sufficiently Plead Negligence

The elements of negligence are: (1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages. *Paz v. California*, 22 Cal. 4th 550, 559 (2000). Plaintiffs sufficiently have alleged facts to support each element of their negligence claims.

### 1.       Plaintiffs Allege A Cognizable Injury

"Under California law, appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009), *aff'd*, 380 Fed. Appx. 689 (9th Cir. 2010). Sony contends that Plaintiffs failed to allege cognizable injury. Mot. at 11. Not so. Plaintiffs allege that they were injured because their Personal Information was stolen, which has exposed them to a risk of identity theft and fraud. ¶¶ 4, 46, 94-95. Additionally, Plaintiffs suffered injury related to the loss of use and value of SOS, the loss of use and value of prepaid Third Party Services, and the diminution of value of their PS3s and/or PSPs. ¶¶ 97-100.

Sony's cases are inapposite. *See* Mot. at 11 n.15. First, most of those cases apply law from states other than California.[11] Second, Sony's reliance on *Ruiz*, 380 Fed. Appx. 689, a non-precedential Ninth Circuit opinion,[12] is misplaced. Mot. at 12. In *Ruiz*, a laptop computer containing employees' personal information was stolen from a Gap vendor's office, but it was unclear whether it was the hardware or the information on it that the thief sought. *Ruiz*, 622 F. Supp. 2d at 910. Here, in contrast, the Network was breached and Plaintiffs' and other Class members' Personal Information was stolen. ¶¶ 59, 64.[13]

---

[11]      *Krottner v. Starbucks Corp.*, 406 Fed. Appx. 129 (9th Cir. 2010) (Washington law); *Pisciotta*, 499 F.3d 629 (Indiana law); *McLoughlin v. People's United Bank, Inc.*, No. 3:08-cv-00944(VLB), 2009 U.S. Dist. LEXIS 78065 (D. Conn. Aug. 31, 2009) (Connecticut law); *Amburgy*, 671 F. Supp. 2d 1046 (Missouri law). Defendants also cite *Low v. LinkedIn Corp.*, No. 5:11-cv-01468-LHK, 2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11, 2011), which does not even include a claim for negligence.

[12]      9th Cir. R. 36-3(a).

[13]      Moreover, Plaintiff Johnson suffered harm when two unauthorized charges appeared on his Visa credit card after the Data Breach. ¶ 10. *Stollenwerk v. Tri-West Healthcare Alliance*, 254 Fed. Appx. 664 (9th Cir. 2007), is instructive. In *Stollenwerk*, the court recognized that proximate cause can be supported by the logical relationship between the two events. *Id.* at 668. As in *Stollenwork*, the unauthorized charges which occurred after the breach of Plaintiff Johnson's Personal Information were a logical result of the breach. *See id.* ("As a matter of twenty-first century common knowledge, just as certain exposures can lead to certain diseases, the theft of a computer hard drive

*Claridge v. RockYou* is on point. There, the defendant allegedly failed to adequately protect its users' personal information from a data breach. 785 F. Supp. 2d at 858-59. The defendant knew of issues with its network security but left its network prone to attack. *Id.* Applying California negligence law, the court found "that plaintiff's allegations that he was injured by defendant's actions in permitting the unauthorized and public disclosure of his personal information, which had some unidentified but ascertainable value, are sufficient to allege an actual injury at this stage." *Id.* at 866. As in *Claridge*, the harm to Plaintiffs and other Class members is sufficiently appreciable, nonspeculative and present because Sony was aware of issues with its security systems that left its Network vulnerable to attack and Plaintiffs' sensitive Personal Information was in fact stolen as a result thereof.[14] *See* ¶¶ 69-93. As Sony admits, the attack was a "known vulnerability." ¶ 76.

The diminution in value of Plaintiffs' and other Class members' personal property, including their loss use of SOS and the full functionality of their PS3 and PSP and related software and games also constitutes injury. Further, while SOS was turned off, certain of named Plaintiffs and other Class members continued to be charged for prepaid subscriptions to Third Party Services which they could not access. *See* ¶¶ 9-11, 14, 98. California law is clear that loss of use is cognizable damage. *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 777 n.8 (1997) ("economic loss … may also include … ***loss of use*** … as a result of a defendant's negligence.") (emphasis added).[15]

_____

certainly *can* result in an attempt by a thief to access the contents for purposes of identity fraud, and such an attempt *can* succeed."). At this stage of the case based on the allegations in the complaint, the Court should not rule that this is insufficient as a matter of law.

[14]     Sony seeks to downplay the injury Plaintiffs have suffered in the form of the mitigation efforts of time and money, including the money spent on purchasing credit monitoring services. Given Sony's statements after the breach, it was reasonable and prudent for Howe to take actions to mitigate his potential damages. ¶ 59; *see also Anderson*, 659 F.3d at 164 ("That many banks or issuers immediately issued new cards is evidence of the reasonableness of replacement of cards as mitigation."). Moreover, Sony sought and obtained credit monitoring services (albeit inadequate ones). *See* ¶ 67. The actions taken and the reasonableness of mitigation must be compared to the severity of the breach. Here, the Data Breach was considered to be very serious, including by Sony, as evidenced by its actions and statements. *See* ¶¶ 56-67.

[15]     *See also Metz v. Soares*, 142 Cal. App. 4th 1250, 1257 (2006) ("the measure of damages for loss of use is the reasonable rental value of the property for the period in which the plaintiff was wrongly deprived of its use."); Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.").

1   Additionally, Plaintiffs allege they suffered a significant injury and change in the operation of their

2   PS3 and PSP consoles while SOS was offline.  ¶¶ 26-32; *Windham at Carmel Mountain Ranch Assn.*

3   *v. Superior Court,* 109 Cal. App. 4th 1162, 1175 (2003) ("In its common usage, 'damage' includes

4   harm, loss, injury, detriment, or diminution in value.").

5      Sony relies heavily on *In re Sony PS3 Other OS Litig.*, 2011 U.S. Dist. LEXIS 141295, to

6   assert that the PSN service is separate from the PS3 and PSP.  First, this decision is on appeal.

7   Second, the court found it important that the plaintiffs in that case were given a choice of whether

8   they would continue to use of PSN and that Sony was "altering the conditions under which users are

9   permitted access to the PSN."  *Id.* at *3.  Here, Plaintiffs had no choice as Sony unilaterally

10  shutdown the PSN and other online services.

11     Sony also contends that it had no duty to provide uninterrupted service.  Mot. at 13.  Under

12  California law, "[a] duty of care may arise through statute or by contract.  Alternatively, a duty may

13  be premised upon the general character of the activity in which the defendant engaged, the

14  relationship between the parties or even the interdependent nature of human society."  *J'Aire Corp.*

15  *v. Gregory*, 24 Cal. 3d 799, 803 (1979).  Here, Sony represented that access to the PSN was a feature

16  of the PSP and PS3.  Sony's unilateral choice to shut down SOS does not earn it a "free pass," nor

17  can it evade responsibility to its users for the Data Breach by hiding behind an inapplicable

    contractual clause.

18     Moreover, Sony's attempt to limit its duty by disclaiming *all* obligations to provide the SOS

19  is unenforceable because it is unconscionable.  *See* Cal. Civ. Code § 1670.5; *see also U.S. Roofing,*

20  *Inc. v. Credit Alliance Corp.*, 228 Cal. App. 3d 1431, 1447-48 (1991) (warranty disclaimer is subject

21  to doctrine of unconscionability); *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 484

22  (1982) ("an unconscionable disclaimer of warranty may be denied enforcement despite technical

23  compliance with the requirements of [California Commercial Code] section 2316"); *Szetela v.*

24  *Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("Procedural unconscionability focuses on the

25  manner in which the disputed clause is presented to the party in the weaker bargaining position.

26

27

28

1    When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity

2    for meaningful negotiation, oppression, and therefore procedural unconscionability, are present").[16]

3         Sony's contention that Plaintiffs have been "more than reimbursed" is also wrong.  Mot. at

4    13.  The limited offers of 30 free days of premium service and limited free downloads were available

5    for a short period of time and were inadequate to compensate Plaintiffs and other Class members for

6    their harm.  Unlike in *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 613 F. Supp. 2d

7    108, 133 (D. Me. 2009), where the plaintiffs were credited by defendant for something to directly

8    offset their loss (money to replace lost money), Plaintiffs' losses here were not directly offset.  The

9    premium service, known as PlayStation Plus, does offer a few benefits, such as access to a limited

10   number of free games each month, discounts on certain PlayStation Store products, and early access

11   to some media content.  However, those who suffered a lost opportunity to use online services,

12   including playing online games and accessing prepaid Third Party Services, may have had no use

13   and received no benefit from access to PlayStation Plus.  Additionally, the "offer" was only available

     for a limited time.

14
15        **2.    The Allegations Of Sony's Breach Of Duty Satisfy *Iqbal* And
                  *Twombly***

16        Sony further argues that Plaintiffs have not adequately pled that Sony's conduct was a breach

17   of a duty owed to Plaintiffs.  Mot. at 14.  Plaintiffs, however, have alleged that Sony breached its

18   duty to Plaintiffs and other Class members when it failed to implement reasonable safeguards to

19   protect their Personal Information.  It was reasonably foreseeable that Plaintiffs and other Class

20   members, as SOS users who provided Sony with their Personal Information, would suffer injury if

21   Sony failed to adequately protect this information.

22   [16]    The remedy in the warranty disclaimer also "fails of its essential purpose."  *See* Cal. Com.
23   Code § 2719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential
     purpose, remedy may be had as provided in this code.").  There is no need to prove bad faith or
24   procedural unconscionability, but rather simply that the remedy provided is legally inadequate.  *RRX
     Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 547 (9th Cir. 1985) ("Neither bad faith nor procedural
25   unconscionability is necessary under California Commercial Code § 2719(2).  It provides an
     independent limit when circumstances render a damages limitation clause oppressive and invalid.")
26   (footnote omitted).  To limit Plaintiffs' remedy to "direct damages, not to exceed the unused funds in
     your wallet as of the date of termination" is "oppressive and invalid," *see id.*, and causes the
27   limitation on the warranty to "fail of its essential purpose."  Defendants' disclaimers fail for this
     reason as well.
28

In its efforts to discredit the CAC, Sony improperly takes allegations in isolation, ignoring the manner in which they are pled.  For example, while paragraph 175 of the CAC summarizes the allegations in the negligence claim, Plaintiffs incorporate by reference paragraphs 1-116 of the CAC into that claim.[17]  ¶ 172.  Within those paragraphs, particularly paragraphs 69-93, Plaintiffs make many factual claims as to how Sony breached its duty to exercise reasonable care by not safeguarding and protecting Plaintiffs' and other Class members' Personal Information.[18]  These well-pled facts readily satisfy *Iqbal* and *Twombly*.  Indeed, Plaintiffs' factual allegations demonstrate that Sony ***admitted*** its security practices were inadequate (¶ 69) and fell below the requisite standard of care in protecting Plaintiffs' and other Class members' Personal Information (¶¶ 81, 82).  Thus, they provide the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Similarly, Plaintiffs' allegation that Sony failed to comply with widespread industry practices and standards, ¶ 83, is based on the factual allegation that Sony failed to install and maintain appropriate firewalls.  ¶¶ 87, 91, 99.  Additionally, Plaintiffs allege that Sony breached its duty to timely disclose that users' Personal Information had been, or was reasonably believed to have been, stolen or compromised.  ¶ 176; *see also* ¶¶ 46-65.  Putting these factual allegations together, Plaintiffs have alleged a claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

---

[17]     *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

[18]     For example, Plaintiffs allege Sony had knowledge that its security systems were inadequate due to the fact there were public reports that the networks had been previously compromised on multiple occasions.  ¶ 70.  Plaintiffs allege that Sony Corporation's Chief Information Officer admitted that the attack exploited a "known vulnerability," and later its Deputy President stated that after the breach Sony has "done everything to bring our practices at least in line with industry standards or better"  (¶ 70), implying that it was previously below industry standards.

C.      **Plaintiffs Properly Have Pled Their UCL, FAL, And CLRA Claims**

1.      **California Law Governs**

Sony incorrectly contends that under the Ninth Circuit's recent opinion in *Mazza*, 666 F.3d 581, the consumer protection laws of each Plaintiff's home-state apply.  Mot. at 17; *Cf. Allen v. Hylands, Inc.*, No. 12-01150, 2012 U.S. Dist. LEXIS 61606, at *5 (C.D. Cal. May 2, 2012) (holding that *Mazza* does not hold that the consumer protection statutes of out-of-state plaintiffs always apply).  The facts of this case render *Mazza* inapposite – particularly the choice of law provision in Sony's "Terms of Service and User Agreement," which requires application of California law to this dispute.[19]  ¶ 116; *see Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (law in choice of law provision presumptively applies); *Wash. Mut.*, 24 Cal. 4th at 918.  Rather than argue that its own choice of law provision does not apply – an argument Sony should be estopped from making as the drafter of the contract – Sony simply ignores it.

Further, Sony, and not Plaintiffs, bears the significant burden of establishing that a non-forum state's law applies.  *Id.* at 919.  Sony must do far more to meet its burden than simply cite *Mazza*.  Under the proper analysis, Sony's choice of law provision applies if California has "a substantial relationship to the parties or the transaction" or "there is any other reasonable basis for the parties' choice of law."  *Id.* at 916.  Both of these criteria are met, because Sony is based in California and because all of Sony's relevant conduct, including the location of the servers that were breached, occurred in California.  ¶¶ 15, 17, 18.  Additionally, it was Sony (and not Plaintiffs) that drafted the choice of law provision mandating that California law apply to this very dispute.[20]  Sony does not dispute any of these facts.  California law applies.

---

[19]      The provision states:  "[T]his Agreement shall be construed and interpreted in accordance with the laws of the State of California . . ., both parties submit to personal jurisdiction of California and further agree that any dispute arising from or relating to this Agreement shall be brought in a court within San Mateo County, California."  ECF No. 94-2 at 8.

[20]      Additionally, there is no conflict in the policy of California law and the non-forum states' laws Sony seeks to apply.  *See Washington Mutual*, 24 Cal. 4th at 916.  The policy considerations underlying the consumer protection statutes of the states in which Plaintiffs Liberman (Florida), Schucher (Florida), Mitchell (Michigan), and Wilson (Texas) reside, are the same as California.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (purpose of the UCL is to "protect[] the general public against unscrupulous business practices"); *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 64 (2009) (purpose of the CLRA is "to protect consumer against unfair and deceptive business

2.  **Plaintiffs Have Alleged Injury Under The UCL, FAL, And CLRA**

Sony's "standing" arguments specifically directed at Plaintiffs' UCL, FAL, and CLRA claims also fail.  Standing under the UCL and FAL (but not the CLRA) requires that named plaintiffs have suffered injury in fact and have "lost money or property" as a result of a defendant's business practices.  Cal. Bus. & Prof. Code §§ 17204, 17535.  "Lost money or property" is broadly interpreted and includes: (1) providing more in a transaction, or obtaining less, than plaintiff otherwise would have; (2) having "a present or future property interest diminished;" (3) being "deprived of money or property to which he or she has a cognizable claim;" or (4) "being required to enter into a transaction…that would otherwise have been unnecessary." *Kwikset*, 51 Cal. 4th at 323.  Similarly, though it is not construed as a standing requirement, under the CLRA, an action may be brought by "[a]ny consumer who suffers damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful under Section 1770."  Cal. Civ. Code § 1780(a).  Damage "is not synonymous with 'actual damages,' and may encompass 'harms other than pecuniary damages.'" *Doe v. AOL LLC*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (quoting *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010)).

As discussed above, Plaintiffs and other Class members have suffered injury in fact and "lost money or property" because, in addition to the other injuries for loss of use, they purchased a product or service but did not receive what they bargained for.  *See Lozano v. AT&T Wireless Svcs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007) (finding injury under the UCL where plaintiff paid for certain phone services but did not receive the full value of services due to defendant's alleged undisclosed billing practices); *see also AOL*, 719 F. Supp. 2d at 1111.[21]

---

practices"); Fla. Stat. Ann. § 501.202(2) (purpose of Florida Deceptive and Unfair Trade Practices Act is "[t]o protect the consuming public and legitimate business enterprise from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices…."); *Zine v. Chrysler Corp.*, 600 N.W. 2d 384, 391 (Mich. Ct. App. 1999) (purpose of Michigan Consumer Protection Act is "to protect consumers"); Tex. Bus & Com. Code Ann. § 17.44 ("underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty").

[21]  For example in *AOL*, paid subscribers to AOL Internet services alleged that contrary to AOL holding itself out to be a leader in internet security and representing that its services were "safe, secure and private," AOL publicly disclosed personal information.  719 F. Supp. 2d at 1111.  The

The cases Sony cites are factually distinguishable and, in fact, confirm that Plaintiffs' sufficiently plead injury for standing purposes.  *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (citing *AOL* and recognizing that "a *consumer* of certain services (i.e., who 'paid fees' for those services) may state a claim under certain California consumer protection statutes when a company, in violation of its own policies, discloses personal information about its consumers to the public"); *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *44-45 (finding no injury because "Plaintiffs did not pay for services"); *Thompson v. Home Depot, Inc.*, No. 07cv1058, 2007 U.S. Dist. LEXIS 68918, at *7-11 (S.D. Cal. Sept. 18, 2007) (providing personal information on form did not constitute injury); *Ruiz*, 380 Fed. Appx. at 692 (stolen equipment containing personal information without more not sufficient); *see also In re Sony PS3 Other OS Litig.*, 2011 U.S. Dist. LEXIS 141295, at *9 (plaintiffs had choice of whether to have continued access to PSN).  Accordingly, Plaintiffs alleged injury and standing under the UCL, FAL, and CLRA.

### 3.    Plaintiffs Adequately Have Alleged Defendants' Violations Of The UCL, FAL, And CLRA

Attacking only Plaintiffs' misrepresentation claims, Sony next contends that Plaintiffs have failed to satisfy Rule 9(b), because they have failed to allege with enough particularity either that Sony's misrepresentations were "likely to deceive" or that Plaintiffs actually relied on Sony's misrepresentations.  Sony is wrong.

Rule 9(b) only requires that allegations regarding the circumstances constituting fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute

---

court found plaintiffs sufficiently alleged injury under the UCL, FAL and CLRA because "AOL's collection and disclosure of members' undeniably sensitive information is not something that members bargained for when they signed up and paid fees for AOL's services."  *Id.* at 1111, 1113.  Similarly, here, Plaintiffs did not get what they bargained for. Sony represented that PSPs and PS3s would be able to access the PSN.  ¶¶ 6-8, 26, 27, 30-32. Sony further represented that Plaintiffs' Personal Information would be kept secure with "reasonable measures."  ¶¶ 42-45.  However, Sony did not use "reasonable measures," and in fact knew that its Network was not secure.  ¶¶ 46-53.  Accordingly, Plaintiffs did not receive the full use and access promised on the PSPs and PS3s and certainly did not bargain for the disclosure of their Personal Information.  Moreover, Sony's after-the-fact offer of one month of online services cannot operate to eliminate standing that already existed.  *See Lozano*, 504 F.3d at 733.  Further, whether it offsets the harm caused is a question of fact inappropriate to consider on a motion to dismiss.  *See id.* at 733 n.8.

the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996) ("[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer."); *Cooper v. Picket*, 137 F.3d 616, 625 (9th Cir. 1997) (plaintiff need only "set forth what is false or misleading about a statement, and why it is false").  Plaintiffs satisfy Rule 9(b).

   **a.**  **Plaintiffs Allege Sony's Representations Are Likely To Deceive**

   In the CAC, Plaintiffs allege, among other things, that Sony violated the UCL, FAL, and CLRA by: (1) misrepresenting the quality of security of its Network and that it would take "reasonable measures" to protect customers' personal information on the Network; (2) misrepresenting that the PS3s and PSPs could access the PSN online services; (3) misrepresenting that the PS3s and PSPs would be able to connect to Qriocity, SOE, and other third party services such as Netflix; and (4) failing to disclose that its Network was unsecure.  ¶¶ 120, 122, 123, 133, 134, 135, 144, 146.

   The test for deception under the UCL, FAL, and CLRA is an objective one, where a plaintiff need only show that a defendant's conduct is likely to deceive members of the public.  *Plascencia v. Lending 1ˢᵗ Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (UCL); *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002) (CLRA).  The conduct need only be likely to deceive the reasonable consumer, and not a particular consumer.  *See Johns v. Bayer Corp.*, No. 09cv1935, 2012 U.S. Dist. LEXIS 13410 (S.D. Cal. Feb. 3, 2012) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) and *Yokayama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010)).  The UCL, FAL, and CLRA prohibit not only representations that are false, but also any representation "which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 938-39.  Plaintiffs have alleged deception here.

   First, Plaintiffs do not allege that the PSPs and PS3 were never capable of accessing the PSN and other online services.  Rather, Plaintiffs allege that Sony represented that one of the features of

1   PSPs and PS3s was that the PSN online services could be accessed, but because of Sony's

2   inadequate security, the PSN and other online services were rendered inaccessible.  ¶¶ 27, 28, 52, 53.

3   As discussed above, this is actionable under the UCL, FAL, and CLRA.  *See supra* §IV.C.2.

4       Second, the fact that Sony includes broad disclaimers in its Privacy Policy and Terms of

5   Service does not bar Plaintiffs' claims.  *See In re Facebook PPC Adver. Litig.*, No. 5:09-cv-03043,

6   2010 U.S. Dist. LEXIS 136505, at *13-30 (N.D. Cal. Dec. 15, 2010) (finding that despite broad

7   disclaimers, it was still a question whether the representations as a whole were likely to deceive); *see*

8   *also Williams*, 552 F.3d at 939 (finding that "reasonable consumers should not be expected to look

9   beyond misleading representations on the front of the box to discover the truth from the ingredient

10  list in small print on the side of the box").   The relevant inquiry is whether all of Sony's

11  representations as a whole are "likely to deceive" the reasonable consumer.  *See In re Facebook*

12  *PPC*, 2010 U.S. Dist. LEXIS 136505, at *14; *Williams*, 552 F.3d at 939.  Plaintiffs have alleged that,

13  taken as a whole, Sony's representations led Plaintiffs to believe that the PSPs and PS3s could access

14  the PSN online services and that Sony would at least take "reasonable measures" to keep Plaintiffs'

15  and other Class members' Personal Information secure, which Sony failed to do.  ¶¶ 27, 31, 40-45,

16  75-85.  Thus, as a whole, Sony's representations were "likely to deceive" the reasonable consumer.[22]

### b.    Plaintiffs Alleged Reliance

17      Sony also argues that Plaintiffs failed to allege actual reliance on any of Sony's statements

18  because Plaintiffs assented to the Terms of Service and Privacy Policy after obtaining their consoles

19  and did not allege that they saw any representations prior to their purchase.  Mot. at 22.

20      Plaintiffs need not "plead with an unrealistic degree of specificity that the plaintiff relied on

21  particular advertisements or statements" or "demonstrate individualized reliance on specific

---

24  [22]    *Freeman v. Time Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995), is distinguishable.  There the

25  court found that a mailer that suggested plaintiff had won a million dollars was not likely to deceive
the reasonable consumer because it contained explicit and repeated qualifying statements, including

26  language located immediately next to the allegedly deceptive representation.  *Id.* at 289-90.  By
contrast, here, Sony did not provide any explicit disclaimers when it represented that the PS3s and

27  PSPs could access the SOS and did not explicitly disclaim that it would not take "reasonable
measures" to keep the Personal Information secure.

misrepresentations to satisfy the reliance requirement."[23] *Tobacco II*, 46 Cal. 4th at 327-28; *see also Morgan v. AT&T Wireless Servs. Inc.*, 177 Cal. App. 4th 1235, 1258 (2009) ("Plaintiffs are not required, as AT&T asserts, to plead the specific advertisements or representations they relied upon in making their decision to purchase the [product].").   Moreover, reliance is presumed where the misrepresentation is a material misrepresentation or omission. *Mass. Mut.*, 97 Cal. App. 4th at 1294-95; *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971).   Additionally, the representation need only be one of the reasons for the purchase, and not the sole basis.  *See*, *e.g.*, *Kwikset*, 51 Cal. 4th at 326-27 (reliance need not be the "sole or even the predominating or decisive factor influencing his conduct . . . it is enough that the representation played a substantial part, and so had been a substantial factor, in influencing his decision"); *Tobacco II*, 46 Cal. 4th at 326 (same).

Here, Plaintiffs allege they purchased their consoles for use on the PSN (as represented by Sony) and were required to read and agree to Sony's Terms of Service and Privacy Policy before first accessing the PSN.  *See* ¶¶ 9-14, 40-45.  Thus, to the extent required, Plaintiffs have sufficiently pled reliance.

### 4.    Plaintiffs Are Entitled To Injunctive Relief And Restitution

Sony next contends that restitution is not available because Plaintiffs paid monies to third parties (*e.g.*, Netflix) not Sony, any loss of value over the lifetime of the consoles or services did not accrue to Sony, and Sony offered free premium services for the period of service interruption.[24] Mot. at 23.  Restitution is permitted to compel "defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken…." *Trew v. Volvo Cars of N. Am.*, No. CIV-S-05-1379, 2006 U.S. Dist. LEXIS 4890, at *6 (E.D. Cal. Feb. 8,

---

[23]    Named plaintiff (and only named plaintiff) reliance is only required for UCL "fraudulent" prong claims.  *Tobacco II*, 46 Cal. 4th at 326 n.17 ("There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application."); *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069, 1090 (2007) (applying different causation standard to unlawful prong); *Olivera v. Am. Home Mortg. Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("For claims based on the 'unfair' or 'unlawful' prong of the UCL claim, courts have held that the plaintiff…may allege 'causation' more generally.").  Sony does not bother to distinguish the various causation standards and does not contend that Plaintiffs have failed to satisfy causation under the "unlawful" and "unfair" prongs.

[24]    As stated above, whether Sony's one month of online services offset Plaintiffs' injury is a fact intensive issue not determined on a motion to dismiss.  *See Lozano*, 504 F.3d at 733 n.8.

2006).  Restitution is appropriate even where a defendant did not receive money directly from plaintiff but otherwise profited from the unfair business practice.  *See id.* at *7-9.  Restitution "is not limited only to the return of money or property that was once in the possession of [plaintiff]. Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest."  *Lozano*, 504 F.3d at 733; *see also Ruiz*, 380 Fed. Appx. at 692.

Here, Plaintiffs and other Class members have a vested interest in the loss of use of SOS and the full use of their PS3s and PSPs (which includes access to SOS) that they bargained for, as well as the loss of use of Third Party Services discussed above.  *See Lozano*, 504 F.3d at 734 (finding vested interest in loss of free minutes provided under the contract); *Trew*, 2006 U.S. Dist. LEXIS 4890, at *7-9 (permitting restitution from defendant who profited from the unfair and deceptive conduct despite not receiving direct payment from plaintiffs); *see also In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007) (permitting restitution under the UCL where overcharges paid by plaintiff can be traced to defendant).

Additionally, Plaintiffs are entitled to injunctive relief because they have been injured by Sony's unfair and deceptive business practices.  *See Kwikset*, 51 Cal. 4th at 336 (injunctive relief permitted where plaintiff has standing even where restitutionary relief is not); *supra* § IV.C.2.

### 5.   The Transactions At Issue Are Actionable Under The CLRA

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result in the sale or lease of goods or services…."  Cal. Civ. Code §1770(a).  "Services" within the context of the CLRA are defined as "work, labor, and services other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code §1761(b).  "Goods" are defined as "tangible chattels."  *Id.* §1761(a).  Plaintiffs allege that Sony violated the CLRA by misrepresenting that PS3s and PSPs purchased by Plaintiffs and other Class members could access SOS and failing to disclose that the Network was unsecure and would result in a loss of use of SOS by Plaintiffs' and other Class members' PS3s and PSPs.  ¶¶ 7-8, 144.  Plaintiffs expressly allege that this conduct violates the CLRA because Sony designed, developed, and marketed the PSPs, PS3s and SOS as working together and as secure.  ¶ 142.  Thus, the transactions at issue are the purchases of the PSPs and PS3s, and SOS.  Plaintiffs allege that Sony sold the PSP and PS3, intending that they be used

with the PSN and other online services, misrepresenting, however, that Sony's Network was secure and further failing to disclose that the unsecure nature of the Network could result in the PSN and other services being unavailable.[25]  ¶¶ 26-28, 30, 31, 47, 48.  Thus, in contrast to *Wofford v. Apple, Inc.*, No. 11-CV-0034, 2011 U.S. Dist. LEXIS 129852 (S.D. Cal. Nov. 9, 2011), where the court found free software is not a good or service under the CLRA (*id.* at *6-7), Sony represented at time of sale of the PSP or PS3 that SOS would work with those devices, and Plaintiffs and other Class members purchased the SOS.

### D.   Plaintiffs State A Claim Under The California Database Breach Act

#### 1.   Sony Failed To Notify Of The Breach In The Most Expedient Time Possible And Without Unreasonable Delay

Plaintiffs properly allege that Sony failed to notify Plaintiffs and other Class members of the Data Breach in the most expedient time possible and without unreasonable delay, thereby violating the Breach Act, Cal. Civ. Code § 1798.82 (a).  Specifically, Plaintiffs allege that Sony was aware of the Data Breach and resulting theft of Plaintiffs' and other Class members' Personal Information on or about April 17, 2011, but failed to notify them of the Data Breach until nine days later, April 26, 2011.  *See* ¶¶ 50-59.  These allegations show that Sony failed to provide requisite notice of the Data Breach, "in the most expedient time possible and without unreasonable delay."  *See* Cal. Civ. Code § 1798.82(a).

Unable to refute these allegations within the context of the CAC, which they are required to do in this Rule 12(b)(6) context, Sony attempts to change the rules in an effort to refute this fact – going outside the pleading and relying on the report of a California agency.[26]  Mot. at 26 n.24.

---

[25]      Sony's procedural arguments similarly fail.  *See* Mot. at 25 n.23.  On June 8, 2011, Plaintiff Johnson provided Sony with notice of the CLRA claims asserted and that claims for damages would be asserted should Sony not comply.  CLRA notice is intended to provide the defendant with an opportunity to cure its conduct and avoid an action for damages.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1023 (9th Cir. 2011).  Sony did not respond to the notice and cannot now contend that it did not have notice of the claims asserted.  *See id.*  Similarly, Plaintiff Johnson filed the affidavit required under the CLRA with his initial complaint that stated that San Diego County is an appropriate venue.  *See* ECF No. 1-1 (Case 3:11-cv-01268-BTM-WMC).

[26]      A reference to documents outside the complaint is inappropriate on a motion to dismiss.  *Goosby v. Ridge*, No. 09-CV-02654-RBB, 2012 WL 1068881, at *6 (S.D. Cal. Mar. 29, 2012); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 172 (9th Cir. 1997); *Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995).

1    Nonetheless, the report expressly states that its recommendations are "neither regulations, nor

2    mandates, nor legal opinions."[27]  Thus, by its own terms, the report has no bearing here.

### 2.    Plaintiffs Properly Allege Theft Of Personal Information

4          Plaintiffs allege that Sony's conduct violated the Breach Act because the Data Breach

5    involved the theft of "customer names; mailing addresses; email addresses; birth dates; credit and

6    debit card numbers, expiration dates, security codes; online network passwords and login

7    credentials; answers to security questions; and other personal information."[28]  ¶¶ 4, 59, 64.  This

8    allegation is sufficient under the Breach Act.

9          In addition, there is no support for Sony's claim that the stolen password must *only* be for use

10   at a financial institution account.  Mot. at 27.  Rather, it must only be a "password that would *permit*

11   *access* to an individual's financial account."  Cal. Civ. Code § 1798.81.5(d)(1).  Consumers use

12   passwords for online networks and bank accounts interchangeably; a fact well recognized in the

     online privacy community.

### 3.    Plaintiffs Properly Allege That They Were Injured By Sony's Violation Of The Breach Act

15         The Breach Act provides that "[a]ny customer injured by a violation of [the Breach Act] may

16   institute a civil action to recover damages."  Cal. Civ. Code § 1798.84(b).  Here, Plaintiffs allege

17   that, "[a]s a result of Sony's violation of [the Breach Act], Plaintiffs and other Class members

18   incurred economic damages relating to expenses for credit monitoring, loss of use and value of Sony

19   Online Services, loss of use and value of prepaid Third Party Services, and diminution of the value

20   of their PS3s and/or PSPs."  ¶ 162; *see also* ¶ 90.  Additionally, Plaintiffs allege that because Sony

21   did not immediately notify them of the Breach, they were unable to obtain the necessary credit

22   protection.  ¶ 94.  Thus, Plaintiffs' allegations support that they and other Class members were

23   injured as the result of Sony's violation of the Breach Act.

---

[27]    *See* Cal. Office of Privacy Protection, *Recommended Practices on Notice of Security Breach Involving Personal Information* (Jan. 2012)*, at 7.

[28]    The Breach Act defines personal information, in relevant part, to be "an individual's first name or first initial and last name in combination with . . . [an] account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account."  Cal. Civ. Code § 1798.82(h)(3).

### 4. Plaintiffs Properly Allege Statutory Standing Under The Breach Act

Sony's statutory standing argument likewise fails. The Breach Act provides that "*[a]ny customer* injured by a violation of [the Breach Act] may institute a civil action to recover damages," and is not limited to California residents as Sony suggests.  Cal. Civ. Code § 1798.84(b) (emphasis added).   In fact, under Sony's contract, California law is expressly the law to apply to all users, regardless of residence. As detailed above, Plaintiffs allege that they and other Class members were injured as a result of Sony's violation of the Breach Act.  Thus, Plaintiffs have standing to sue under the Breach Act.

### E. Plaintiffs Adequately Have Pled Unjust Enrichment

California recognizes unjust enrichment as an independent cause of action.  *See, e.g., Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under …California…law, unjust enrichment is an action in quasi-contract").[29]

To state a claim for unjust enrichment under California law, "a plaintiff must allege a receipt of a benefit and unjust retention of the benefit at the expense of another."  *Sanders*, 672 F. Supp. 2d at 989 (citing *Lectrodryer*, 77 Cal. App. 4th at 726); *First Nationwide Savings v. Perry,* 11 Cal. App. 4th 1657, 1662-63 (1992).  Plaintiffs have done that.  *See*, *e.g.*, ¶¶ 166-68.  These allegations, in addition to those detailed above, demonstrate Plaintiffs' unjust enrichment claims to be facially plausible.

Moreover, the existence of a contract between two parties does not *per se* preclude an unjust enrichment claim.  A plaintiff may prevail under an unjust enrichment theory when a contract is found to be "unenforceable or ineffective" or "the defendant obtained a benefit from the plaintiff by

---

[29]     *In re Apple In-App Purchase Litig*, 2012 U.S. Dist. LEXIS 47234; *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) and *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992)); *but see Walker v. USAA Cal. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007).  Sony cites to *Walker*, which relies on *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310 (1989).  The *Dinosaur Dev., Inc.* court's approach was premised on a linguistic analysis of the meaning of and relationship between the legal terms "unjust enrichment" and "restitution." As one court noted: "[C]ourts finding that California does not allow an 'unjust enrichment' cause of action have made essentially semantic arguments-focusing on the interrelationship between the legal doctrine of unjust enrichment and the legal remedy of restitution." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006).

fraud, duress, conversion, or similar conduct." *See Oracle Corp. v. SAP* AG, No. 07-1658 PJH, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton,* 123 Cal. App. 4th 379, 388 (2004)); *see also In re Apple In-App Purchase Litig*, 2012 U.S. Dist. LEXIS 47234, at *6 (refusing to dismiss plaintiffs' unjust enrichment claims even though the parties entered into a Terms and Conditions agreement). Whether the Terms of Service Agreement is enforceable, and to what extent, is a matter that will be subject to discovery and likely contested by the parties throughout this litigation. This issue is not appropriate for consideration at the motion to dismiss stage.

Additionally, Sony is wrong in stating that Plaintiffs' allegations do not support that Sony received benefits under circumstances making the retention of such benefits inequitable and/or unjust. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). As noted herein, Plaintiffs' allegations do exactly this. Sony's arguments to the contrary are based on its erroneous recasting of the case and, further, relate to issues for the fact finder, and not the sufficiency of Plaintiffs' allegations. Thus, Sony's arguments in this regard should be rejected.

Plaintiffs need not plead every conceivable fact relating to their unjust enrichment claims as Sony represents. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007) (Plaintiffs need not plead "detailed factual allegations."). Rather, Plaintiffs must allege sufficient facts to provide Sony with notice of the grounds upon which their unjust enrichment claims rest and to show the plausibility of their unjust enrichment claims on their face, requirements Plaintiffs have satisfied here. *See Wilson*, 668 F.3d at 1140.

### F.  Plaintiffs Sufficiently Have Pled Their Bailment Claim

A bailment is generally defined as "the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men." *Niiya v. Goto*, 181 Cal. App. 2d 682, 687 (1960) (citation omitted); *see also McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006). Those elements are met here. As alleged in the CAC, Plaintiffs delivered and entrusted (their Personal Information), undeniable "a thing" in this context, to Sony pursuant to a contractual arrangement for the sole purpose of accessing online services, ¶¶ 182-183, and they entrusted Sony to keep that information safe and protected while it was in Sony's custody.

Sony erroneously contends that Plaintiffs' Personal Information is not "personal property" that can be subject to bailment.  Bailment, however, is not limited to tangible physical property.  *See Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485 (1996) (funds which are held in a brokerage account are in the nature of a bailment); *see also Kremen v. Cohen*, 337 F.3d 1024, 1035-36 (9th Cir. 2003) (holding that an internet domain name was property); *Palm Springs-La Quinta Dev. Co. v. Kieberk Corp.*, 46 Cal. App. 2d 234 (1941) (permitting damages for the value of cards and the intangible information lost); *Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E. 3d 1272, 1278 (N.Y. 2007) (data stored on computer is property).  Additionally, when Plaintiffs and other Class members entrusted their Personal Information to Sony for access to online content, Sony became a bailee.  *See Niiya*, 181 Cal. App. 2d at 687 (bailment is the delivery of property to another for some special object or purpose to conform to the objects or purposes of the delivery).

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008) and *Richardson v. DSW, Inc.*, No. 05-C4599, 2005 WL 2978755 (N.D. Ill. Nov. 3, 2005), cited by Sony are distinguishable.  *Ruiz* and *Richardson* both hold that there can be no bailment of personal information because there is no expectation that the bailee will ever return it.  *See Ruiz*, 540 F. Supp. 2d at 1127; *Richardson*, 2005 WL 2978755 at *4.  But California does not require an agreement that the bailee eventually return the property.  *See People v. Cohen*, 8 Cal. 42, 43 (1857) ("[t]he objects of bailment … [i]n some cases, in fact, in a large majority of transactions, they are made for the purpose of a disposition or conversion of the property."); Cal. Civ. Code § 1814.[30]

---

[30]   To the extent *Richardson* holds otherwise, it relies on specific requirements of Illinois law. *See* 2005 WL 2978755, at *4.

Furthermore, contrary to *Ruiz*, it is not impossible to conceive of Plaintiffs' Personal Information as property given to Sony to hold for a period of time.  Personal Information is property just as much as website domain names (*Kremen*, 337 F.3d at 1035-36), and Plaintiffs gave the Personal Information to Sony for use for a limited period of time.  As soon as Plaintiffs ceased using SOS, the reasonable expectation was for Sony to "return" the Personal Information.  *See* ¶¶ 182-183.

**IV.      CONCLUSION**

For the foregoing reasons, Sony's motion to dismiss should be denied.

Dated:  May 14, 2012

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)

By:              s/ *Timothy G. Blood*
            TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, California  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

CASEY GERRY SCHENK FRANCAVILLA
  BLATT & PENFIELD LLP
GAYLE M. BLATT
110 Laurel Street
San Diego, California  92101
(619) 238-1811
(619) 544-9232 (fax)

***Plaintiffs' Liaison Counsel***

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC
ADAM J. LEVITT
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
(312) 984-0000
(312) 984-0001 (fax)
levitt@whafh.com

STRANGE & CARPENTER
BRIAN R. STRANGE
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California  90025
(310) 207-5055
(310) 826-3210 (fax)
lacounsel@earthlink.net

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE LAW OFFICES OF DAVID A. MCKAY
DAVID A. MCKAY
555 North Point Center East, Suite 400
Alpharetta, Georgia  30022
(678) 366-5180
(678) 366-5001 (fax)

ROBBINS GELLER RUDMAN &
  DOWD, LLP
PAUL J. GELLER
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
(561) 750-3000
(561) 750-3364 (fax)

BARNOW AND ASSOCIATES, P.C.
BEN BARNOW
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000
(312) 641-5504 (fax)

***Plaintiffs' Steering Committee***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and that I shall cause the foregoing document to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

/s_____*Timothy G. Blood*_____
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, California 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com