HARVEY J. WOLKOFF (*Pro Hac Vice*)
harvey.wolkoff@ropesgray.com
MARK P. SZPAK (*Pro Hac Vice*)
mark.szpak@ropesgray.com
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
Tel:    (617) 951-7000
Fax:    (617) 235-7500

[Additional Counsel Listed on Signature Page]

Attorneys for Defendants SONY COMPUTER
ENTERTAINMENT AMERICA LLC, SONY
NETWORK ENTERTAINMENT
INTERNATIONAL LLC, SONY NETWORK
ENTERTAINMENT AMERICA INC., SONY
ONLINE ENTERTAINMENT LLC, SONY
CORPORATION OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SONY GAMING NETWORKS AND CUSTOMER DATA SECURITY BREACH LITIGATION,<br><br>This Document Pertains To: All Actions | CIVIL CASE NO.  11-md-2258 AJB (MDD)<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge:       Honorable Anthony J. Battaglia<br>Courtroom: 12<br>Date:        August 10, 2012<br>Time:        1:30 p.m.<br><br>**ORAL ARGUMENT REQUESTED** |

1

**TABLE OF CONTENTS**

2

Page

3   I.   INTRODUCTION ............................................................................................ 1

4   II.  ARGUMENT ................................................................................................... 2

    A.  Plaintiffs Lack Standing and Fail to State Any Claim as to SOE or SCA ............. 2

    B.  Plaintiffs Lack Standing For Failure to Allege Any Injury-In-Fact or Causal
        Connection. ........................................................................................................ 3

        1.  No Injury-in-Fact from Mere Exposure of Personal Information ............... 3

        2.  No "Causal Connection" Alleged to Support Claim of Injury-in-Fact ........ 4

    C.  Plaintiffs Fail to State a Claim as to Any Common Law or Statutory Counts ........ 4

        1.  Plaintiffs' Claim for Negligence Must be Dismissed ................................. 4

            a.  Plaintiffs' Claim is Barred by the Economic Loss Doctrine ........... 4

            b.  Plaintiffs Fail to Allege Any Cognizable Injury ............................. 5

            c.  Plaintiffs' Allegations of Negligent Conduct and Breach of
                Duty Fail to Satisfy *Iqbal/Twombly* .................................................. 7

        2.  Plaintiffs' Consumer Protection Claims Must be Dismissed ...................... 8

            a.  Plaintiffs' Claims Under the UCL, FAL, and CLRA Must be
                Dismissed as to the Non-Resident Named Plaintiffs ...................... 8

            b.  Plaintiffs Fail to Allege Cognizable Injury Under the UCL,
                FAL, or CLRA ................................................................................ 9

            c.  Plaintiffs Fail to Allege a Violation of the UCL, FAL, and
                CLRA with Sufficient Particularity ................................................ 10

                i.   Plaintiffs Fail to Allege Actual Reliance ........................... 10

                ii.  Plaintiffs Fail to Allege that Defendants Made Any
                     Statements Likely to Deceive ............................................. 12

            d.  Plaintiffs' UCL and FAL Claims Also Fail for Lack of Any
                Basis for Restitution or Injunctive Relief ...................................... 14

            e.  The CLRA is Also Inapplicable to the Transactions at Issue ........ 15

        3.  Plaintiffs Fail to State a Claim Under the California Database
            Breach Act ............................................................................................... 16

            a.  No Statutory "Personal Information" is Alleged ........................... 16

            b.  Plaintiffs Fail to Allege that They Were "Injured." ...................... 17

            c.  Plaintiffs Fail to Allege a Violation of the Statute ........................ 17

            d.  Non-Resident Plaintiffs Have No Claim Under the Statute ........... 17

        4.  Plaintiffs Fail to State a Claim for Unjust Enrichment .............................. 18

        5.  Plaintiffs' Claim For Bailment Must Be Dismissed ................................... 19

    III. CONCLUSION .............................................................................................. 20

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Airlift Int'l v. McDonnell Douglas Corp.*,

5

685 F.2d 267 (9th Cir. 1982).............................................................................................. 19

6

*Allen v. Hylands, Inc.*,

7

No. CV-12-01150-DMG, 2012 WL 1656750 (C.D. Cal. May 2, 2012)................................... 8

8

*Anderson v. Hannaford Bros., Co.*,

659 F.3d 151 (1st Cir. 2011) ........................................................................................ 6, 15

9

*Armendariz v. Found. Health Psychcare Servs. Inc.*,

10

24 Cal. 4th 83 (2000)...................................................................................................... 19

11

*Aron v. U-Haul Co. of Cal.*,

143 Cal. App. 4th 796 (2006)........................................................................................... 19

12

*Ashcroft v. Iqbal*,

13

556 U.S. 662 (2009) ...................................................................................................... 4, 7

14

*Baltazar v. Apple, Inc.*,

No. CV-10-3231-WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) ............................... 13

15

*Bell Atl. Corp. v. Twombly*,

16

550 U.S. 544 (2007) .......................................................................................................... 7

17

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*,

18

343 F.3d 719 (5th Cir. 2003)............................................................................................. 9

19

*Berry v. Webloyalty.com, Inc.*,

No. 10-CV-1358-H (CAB), 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011)............... 12, 13, 15

20

*Cattie v. Wal-Mart Stores, Inc.*,

21

504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................... 2, 10, 12

22

*Claridge v. RockYou, Inc.*,

23

785 F. Supp. 2d 855 (N.D. Cal. 2011) .............................................................................. 5, 6

24

*County of Santa Clara v. Astra USA, Inc.*,

C 05-03740, 2008 WL 5055395 (N.D. Cal. Nov. 25, 2008)................................................ 17

25

*Doe v. AOL LLC*,

26

719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) ..................................................................... 9

27

*Dorado v. Shea Homes Ltd. P'ship*,

28

No. 11-CV-01027 OWW SKO, 2011 WL 3875626 (E.D. Cal. Aug. 31, 2011)..................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ....................................................................................... 10, 12

*Easter v. Am. West Fin.*,
    381 F.3d 948 (9th Cir. 2004) ............................................................................................. 2, 4

*Ehrlich v. BMW of North Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................................. 11

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................................ 12, 13

*Garcia v. Sony Computer Entm't Am., LLC*,
    --- F. Supp. 2d ---, 2012 WL 1610615 (N.D. Cal. May 8, 2012) ................................ 10, 11, 14

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................................ 16

*In re Apple In-App Purchase Litig.*,
    --- F. Supp. 2d ---, No. 11-CV-1758-EJD, 2012 WL 1123548 (N.D. Cal. Mar. 31,
    2012) ..................................................................................................................................... 18

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) .................................................................................... 2

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................... 14, 15

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................................... 9

*In re Facebook Privacy Litig.*,
    No. 10-CV-02389 JW, 2011 WL 6176208 (N.D. Cal. Nov. 2, 2011) ...................................... 6

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    613 F. Supp. 2d 108 (D. Me. 2009) ...................................................................................... 15

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2012 WL 1353057 (N.D. Cal. Apr. 18, 2012) .................................. 8

*In re iPhone Application Litig.*,
    No. 11-MD-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................ passim

*In re JetBlue Airways Corp. Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................... 13

*In re Sony PS3 Other OS Litig.*,
  828 F. Supp. 2d 1125 (N.D. Cal. 2011), *appeal pending* ........................................ 7, 10, 13, 19

*In re Tobacco II Cases*,
  46 Cal. 4th 298, 328 (2009).................................................................................. 11

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979)............................................................................................ 6

*Johns v. Bayer Corp.*,
  No. 09-CV-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .............................. 10, 11, 12, 18

*Kelomar, Inc. v. Kulow*,
  No. 09-CV-0353-BTM (PCL), 2009 WL 3818817 (S.D. Cal. Nov. 12, 2009) ....................... 6

*Klein Elecs., Inc. v. Boxwave Corp.*,
  No. 10-CV-2197-WQH (POR), 2011 WL 2560238 (S.D. Cal. June 27, 2011)..................... 18

*Klein v. United States*,
  50 Cal. 4th 68 (2010).......................................................................................... 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003)....................................................................................... 14

*Kowalsky v. Hewlett-Packard Co.*,
  No. 10-CV-02176-LHK, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012) ................... 8

*Kremen v. Cohen*,
  337 F.3d 1024 (9th Cir. 2003)............................................................................. 19

*Krottner v. Starbucks Corp.*,
  628 F.3d 1139 (9th Cir. 2010)............................................................................... 3

*Krottner v. Starbucks Corp.*,
  406 F. App'x 129 (9th Cir. 2010).......................................................................... 5

*Kwikset v. Super. Ct.*,
  51 Cal. 4th 310 (2011).................................................................................. 10, 11, 12, 14

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256-GW, 2011 WL 2473399 (C.D. Cal. Apr. 28, 2011)................................ 6

*Lamle v. City of Santa Monica*,
  No. CV 04-6355, 2010 WL 3734868 (C.D. Cal. July 23, 2010) ............................ 17

-iv-

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................................................................... 10, 12, 16

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003)................................................................................................ 2

*Low v. LinkedIn Corp.*,
   No. 5:11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)................................ 6

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)................................................................................. 10, 14, 15

*Mass. Mut. Life Ins. Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (2002)............................................................................................. 11

*Matter of McLinn*,
   739 F.2d 1395 (9th Cir. 1984)............................................................................................. 19

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581, 593-94 (9th Cir. 2012) .............................................................................. 8, 11

*McKinniss v. Gen. Mills, Inc.*,
   No. CV 07-2521 GAF, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ................................. 12

*Narayan v. EGL, Inc.*,
   616 F.3d 895 (9th Cir. 2010)................................................................................................. 9

*O'Neill v. United States*,
   50 F.3d 677 (9th Cir. 1995)................................................................................................. 19

*Oracle Corp. v. SAP AG*,
   No. 07-1658-PJH, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ......................................... 18

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996).............................................................................................. 18

*People v. Poggi*,
   19 Cal. 600 (1862)............................................................................................................. 20

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011).............................................................................................. 3, 4

*Richardson v. DSW, Inc.*,
   No. 05-C4599, 2005 WL 2978755 (N.D. Ill. Nov. 3, 2005)................................................. 20

*Ruiz v. Gap*,
   380 F. App'x 689 (9th Cir. 2010)......................................................................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................. 20

5

*Sanbrook v. Office Depot, Inc.*,
    No. C-07-05938-RMW, 2008 WL 1994884 (N.D. Cal. May 5, 2008) ........................... 14, 15

6

7

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ............................................................................................. 2

8

9

*Slaughter v. Aon Consulting, Inc.*,
    No. 10C-09-001 FSS, 2012 WL 1415772 (Del. Super. Ct. Jan. 31, 2012) ..................... 5

10

*Stanley v. Bayer Healthcare LLC*,
    No. 11-CV-0862-IEG (BLM), 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) ................... 18

11

12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................................................................. 5

13

14

*Stier v. Reading & Bates Corp.*,
    992 S.W.2d 423 (Tex. 1999) ................................................................................. 9

15

*Stollenwerk v. Tri-West Healthcare Alliance*,
    254 F. App'x 664 (9th Cir. 2007) .......................................................................... 5

16

17

*Towantic Energy, L.L.C. v. Gen. Elec. Co.*,
    No. C 04–00446 JF, 2004 WL 1737254 (N.D. Cal. Aug. 2, 2004) .............................. 8

18

19

*Trew v. Volvo Cars*,
    No. CIV-S-051379-DFL (PAN), 2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ................ 14, 15

20

*Vasquez v. Superior Court*,
    4 Cal. 3d 800 (1971) .......................................................................................... 11

21

22

*Wash. Mut. Bank, FA v. Superior Court*,
    24 Cal. 4th 906 (2001) ........................................................................................ 9

23

24

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) .......................................................................... 11

25

*Wofford v. Apple, Inc.*,
    No. 11-cv-0034-AJB (NLS), 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .............. 14, 15, 16

26

27

*Wofford v. Apple, Inc.*,
    No. 11-cv-0034-AJB (NLS), 2012 WL 1431216 (S.D. Cal. Apr. 25, 2012) ................. 14

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
(continued)

**Page**

**STATUTES**

Cal. Civ. Code § 1798.81.5(a) ............................................................................................. 18

Cal. Civ. Code § 1798.81.5(d)(1)(C) ................................................................................... 16

Cal. Civ. Code § 1798.82(a) ........................................................................................... 17, 18

Cal. Civ. Code § 1798.82(h)(3) ........................................................................................... 16

Cal. Civ. Code § 1798.84(b) ................................................................................................ 17

**RULES**

Fed. R. Civ. P. 8 .................................................................................................................... 2

Fed. R. Civ. P. 9(b) .............................................................................................................. 10

S.D. Cal. Civ. L.R. 7.1(f)(3)(b) ............................................................................................ 5

The Sony defendants herein submit this reply to the Opposition Memorandum (the "opposition") filed by the named plaintiffs in response to the defendants' Motion to Dismiss. Terms and names defined in defendants' opening brief are incorporated herein by reference.

## I.    **INTRODUCTION**

It is fundamental that named plaintiffs in a putative class action complaint can only survive a motion to dismiss if they allege facts demonstrating that they themselves have standing, and that their allegations meet the elements of their alleged causes of action. The named plaintiffs simply fail to do so here. Their opposition confirms that:

- No named plaintiff alleges any actual harm from exposure of his or her accountholder information.

- No named plaintiff points to any right or promise to uninterrupted access to the PSN.

- While the named plaintiffs assert claims based on the SOE breach, no named plaintiff alleges having ever had an SOE account.

- Although they assert claims against SCA, no named plaintiff alleges any wrongful conduct by SCA.

- With respect to their PSN accounts, the named plaintiffs each entered into a Terms of Service agreement, but did not file a breach of contract claim. The economic loss doctrine bars any correlative claim in negligence, a settled legal principle as to which the opposition proffered no response.

- With respect to their California statutory consumer protection counts, no named plaintiff alleges having read or relied on any statement upon which their claims are based.

- With respect to their claims of purchase inducement and resulting loss in the value of PS3 consoles, none of the named plaintiffs alleges that he or she actually purchased a console or that such a purchase was induced by a misrepresentation.

- With respect to named plaintiffs' claim of delayed notification, none of them alleges any actual injury from the purported delay.

/////

1    In these and other respects, plaintiffs' opposition demonstrates that the Consolidated

2    Complaint is patently defective and should be dismissed.  Given the significant amount of time

3    afforded the plaintiffs for the crafting and filing of their Consolidated Complaint – which was filed

4    as a follow-on to 65 earlier individual complaints – the dismissal should be with prejudice.

5    **II.    ARGUMENT**

6       **A.    Plaintiffs Lack Standing and Fail to State Any Claim as to SOE or SCA.**

7       As a threshold matter, the Consolidated Complaint must be dismissed against SOE and

8    SCA for lack of standing.  While the named plaintiffs point to a purported "injury" from the two-

9    week suspension of SOE network services, not one alleges having had an SOE account or having

10   used SOE services.[1]  And, as to SCA, the Consolidated Complaint alleges no operative facts at

11   all.[2]  As their opposition makes clear, plaintiffs' sole basis for naming SOE and SCA in the

12   Consolidated Complaint is the conclusory assertion, without a single supporting factual allegation,

13   that "all Defendants acted together."  (Opp'n at 9.)  That is insufficient to establish standing.  *See,*

14   *e.g., Easter v. Am. West Fin.*, 381 F.3d 948, 961‑62 (9th Cir. 2004) (plaintiff borrowers lacked

15   standing against investment trusts where they could not trace the alleged injury – payment of

16   usurious interest rates – to trusts that had never held a named plaintiff's loan); *Cattie v. Wal-Mart*

17   *Stores, Inc.*, 504 F. Supp. 2d 939, 944-46 (S.D. Cal. 2007) (plaintiffs lacked standing against one

18   Wal-Mart entity where they relied solely on allegations that it acted jointly with other Wal-Mart

19   entities).  Therefore, plaintiffs' claims against SOE and SCA should be dismissed for lack of

20   standing.[3]

21   /////

22   [1] The named plaintiffs cannot rely on injuries allegedly suffered by unnamed members of the
     putative class. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Lierboe v.*
23   *State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).
     [2] Plaintiffs cite to only two paragraphs in their Consolidated Complaint as supporting their claims
24   against SCA (Opp'n at 9 n.6), but neither contains a factual allegation as to the conduct of SCA.
     (Compl. ¶ 21 (stating generic allegations of agency as between all defendants); Compl. ¶ 101
25   (quoting a statement made by the Chairman of Sony Computer Entertainment).)
     [3] Even if plaintiffs had properly alleged standing, plaintiffs' claims against SOE and SCA should
26   be dismissed for failure to state a claim, because plaintiffs' allegations against SOE and SCA are
     based on a group pleading that is wholly insufficient under Rule 8 to put SOE and SCA on notice
27   as to the claims against them. *See In re iPhone Application Litig.*, No. 11-MD-02250, 2011 WL
     4403963, at *8 (N.D. Cal. Sept. 20, 2011); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d
28   390, 417-20 (S.D.N.Y. 2011).

**B.** **Plaintiffs Lack Standing For Failure to Allege Any Injury-In-Fact or Causal Connection.**

The named plaintiffs also fail to allege any injury-in-fact sufficient to confer standing to proceed against the other defendants, SNE and SCEA.

**1.** **No Injury-in-Fact from Mere Exposure of Personal Information.**

Plaintiffs' allegations of injury-in-fact from the exposure of their accountholder information do not establish standing. The Ninth Circuit's decision in *Krottner* did ***not*** hold that standing arises from any compromise of personal information. Rather, the Court explicitly stated that standing lies only where plaintiffs allege "a credible threat of harm . . . that is both real and immediate, not conjectural or hypothetical." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (internal citations omitted). The Court also stated – twice – that its holding was limited to the unique facts of that case. *Id.* Importantly, unlike here, the plaintiffs in *Krottner* alleged that plaintiffs' social security numbers had been compromised and ***used*** to open a bank account. *Id.* at 1140-43. The *Krottner* Court held only that those circumstances were capable of creating "a credible threat of harm." *Id.* at 1143. In stark contrast, the named plaintiffs here do not allege that their social security numbers were exposed or taken, that their identities were stolen, or even that they suffered any generalized anxiety or stress from the exposure of their personal information. The named plaintiffs thus fail to allege facts showing a credible threat of real and immediate harm.[4]

Faced with allegations similar to those asserted by plaintiffs, the Third Circuit in *Reilly* distinguished the *Krottner* decision on the ground that *Krottner* involved allegations sufficient to allege a credible threat of misuse because a bank account had been opened using a plaintiff's social security number. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 44-45 (3d Cir. 2011) ("In data

---

[4] The Consolidated Complaint does not allege that plaintiff Johnson's charges were caused by the alleged intrusion, and while plaintiffs make an attempt to obscure this fact, nowhere do they argue in their opposition anything to the contrary (*i.e.*, that the unauthorized charges were caused by the intrusion). (*See, e.g.*, Opp'n at 12 n.13.) Similarly, plaintiffs do not dispute that plaintiff Howe's conclusory allegations of being "forced" to take preventative measures are insufficient to create standing. (*See id.* at 13 n.14; Compl. ¶ 11.) Given the passage of more than nine months between the intrusion and the filing of the Consolidated Complaint, plaintiffs' inability to allege even a single instance of alleged misuse resulting from the intrusion only serves to reinforce their failure to show a credible threat of real and immediate harm.

-3-

1  breach cases, where no misuse is alleged, however, there has been no injury . . . .").  While

2  plaintiffs argue that *Reilly* is inapposite because "Sony has **admitted** its misconduct (e.g. failure to

3  meet industry standards)," (Opp'n at 10 (emphasis in original)), they cite no source for such an

4  admission, nor could they.  *See infra* at p. 7-8.  Plaintiffs' argument also misses the point – they

5  must establish an **injury-in-fact**.  The opposition fails to demonstrate that the named plaintiffs

6  have done so here.[5]

7           **2.     No "Causal Connection" Alleged to Support Claim of Injury-in-Fact.**

8           Plaintiffs' other argument as to standing – that they were injured by a loss of use and

9  diminution in value of their consoles and services – is also insufficient.  Plaintiffs must show a

10  "causal connection" between the alleged representation and the loss of use and value that the

11  named plaintiffs claim.  *See Easter*, 381 F.3d at 961 (discussing Article III requirement of

12  traceability).  The named plaintiffs fail to allege that they themselves relied upon any

13  representation of uninterrupted service or any warranty against intrusion when making their

14  purchases – in fact, as to the consoles, they concede they allege no purchase at all.  (Opp'n at 9 &

15  n.5.)[6]  Any claim of standing on this alternative argument thus fails as well.

16      **C.     Plaintiffs Fail to State a Claim as to Any Common Law or Statutory Counts.**

17           Even if plaintiffs had sufficiently pled standing, the common law and statutory counts

18  alleged in the Consolidated Complaint fail to state a claim.

19               **1.     Plaintiffs' Claim for Negligence Must be Dismissed.**

20                   **a.     Plaintiffs' Claim is Barred by the Economic Loss Doctrine.**

21           The named plaintiffs do not attempt to refute that their negligence claim is barred by the

22  economic loss doctrine, revealing that plaintiffs have nothing to say in response.  This is hardly

23  surprising, since plaintiffs' alleged damages consist entirely of "economic damages" that

24  California courts, as well as courts in numerous other data breach cases, have recognized are not

25  [5] Named plaintiffs also suggest that *Reilly* is distinguishable because there was no evidence there
that the intrusion was "intentional or malicious."  *Reilly*, 664 F.3d at 44.  But there are no

26  allegations here as to any malicious intent against accountholders so as to raise an inference under
*Iqbal* of improper use of accountholder information.  To the contrary, plaintiffs themselves allege

27  that the intruders attacked Sony **on behalf of** accountholders.  (Opp'n at 6; Compl. ¶¶ 72-74.)
[6] Named plaintiffs also do not allege that they purchased any premium PSN service.  (Compl. ¶¶

28  9-14.)

1    recoverable in negligence.  (*See* Mot. at 15-16.)  Moreover, "[the] failure to respond in an

2    opposition brief to an argument advanced in an opening brief constitutes waiver or abandonment

3    in regard to the uncontested issue."  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802

4    F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (internal citations omitted); *see also* S.D. Cal. Civ. L.R.

5    7.1(f)(3)(b).

6                          **b.      Plaintiffs Fail to Allege Any Cognizable Injury.**

7         Even if the named plaintiffs' negligence claim were not barred by the economic loss

8    doctrine, it should be dismissed for failure to allege a cognizable injury.  *See, e.g., Krottner v.*

9    *Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010).  Numerous courts have held that

10   allegations of mere exposure of a plaintiff's personal information, as here, are insufficient to state

11   a claim for negligence.  (*See* Mot. at 11 & n.15.)  Plaintiffs cite no case to the contrary.[7]  Nor do

12   they allege (and therefore they cannot argue) that plaintiff Johnson's unauthorized credit charges

13   were caused by the intrusion,[8] or that plaintiff Howe was "forced" to open a new bank account

14   because his account information was misused.[9]  Instead, plaintiffs invoke totally inapposite cases

15   involving facts wholly different from those at issue here.

16        First, plaintiffs point to *Claridge v. RockYou, Inc.*, which involved a defendant whose

17   entire business model was to collect information from its customers, in exchange for services.  785

18   F. Supp. 2d 855 (N.D. Cal. 2011); *see also* First Am. Compl. ¶¶ 46-50, *RockYou*, 785 F. Supp. 2d

19   _____

20   [7] Plaintiffs attempt to distinguish many of those cases – even those upon which they themselves
     rely elsewhere in their opposition – on the ground that they apply law from states other than
21   California.  But plaintiffs identify no material differences between the negligence law of
     California and that of those other states.  And, while plaintiffs dispute defendants' citation to *Ruiz*
22   *v. Gap*, 380 F. App'x 689 (9th Cir. 2010), the citation is appropriate under 9th Cir. R. 36-3(b).
     Indeed, plaintiffs cite it elsewhere in their opposition.  (*See* Opp'n at 23.)
23   [8] Plaintiffs' citation to *Stollenwerk v. Tri-West Healthcare Alliance*, 254 F. App'x 664, 668 (9th
     Cir. 2007), is of no avail.  There, the plaintiff alleged six specific instances of identity theft
24   beginning just six weeks after the theft of his data, while none had occurred before, and that the
     identity thefts were specifically caused by the intrusion.  *Id.* at 665, 667-68.  In contrast, plaintiff
25   Johnson fails to allege in the Consolidated Complaint that his unauthorized charges were the result
     of the intrusion.  (*See* Compl. ¶ 10.)  Plaintiffs' attempt to recast their allegations in the opposition
26   extends impermissibly beyond what was alleged in the Consolidated Complaint, and in any event
     remains a far cry from *Stollenwerk*.  (*See* Opp'n at 12 n.13.)
27   [9] *See Slaughter v. Aon Consulting, Inc.*, No. 10C-09-001 FSS, 2012 WL 1415772, at *4 (Del.
     Super. Ct. Jan. 31, 2012) (dismissing plaintiffs' claims for failing to establish a causal connection
28   between the intrusion and instances of identity theft).

855 (No. 09-CV-6032-VRW).  The court found cognizable injury – not on the basis of any risk of future harm – but rather on the ground that plaintiffs' information, on the very unique facts of that case, could be construed as having an ascertainable economic value.  *Id.* at 861, 866.  Plaintiffs assert no such theory here.  Moreover, the *RockYou* court acknowledged that it had "doubts" about plaintiffs' "novel" theory of injury, noting that its decision (rendered in early 2011) was primarily motivated by the "paucity of controlling authority" at that time.  *Id.* at 861.  Subsequent decisions have expressly declined to follow *RockYou*.  *See, e.g.*, *In re Facebook Privacy Litig.*, No. 10-CV-02389 JW, 2011 WL 6176208, at *5 (N.D. Cal. Nov. 2, 2011) (declining to follow *RockYou* given the absence of any supporting authority for such a theory of damages).[10]

Second, plaintiffs cite *Anderson v. Hannaford Bros., Co.*, which involved a situation where the defendant affirmatively acknowledged extensive third-party misuse of customer information arising directly from the intrusion.  659 F.3d 151, 154 (1st Cir. 2011).  Plaintiffs allege no such facts here.

Third, plaintiffs cite *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) to argue that defendants had a common law duty to provide uninterrupted access to the PSN, rendering the temporary suspension of network service a cognizable injury.  However, the facts and legal analysis in that case – a construction dispute involving alleged interference with prospective economic advantage – have no bearing here.  Indeed, this Court held that *J'Aire Corp.* does not apply where the alleged duty relates to a contract between the parties.  *See, e.g.*, *Kelomar, Inc. v. Kulow*, No. 09-CV-0353-BTM (PCL), 2009 WL 3818817, at *3 (S.D. Cal. Nov. 12, 2009).  Defendants were under no obligation, either by way of statute or contract, to provide uninterrupted access to the PSN.  To the contrary, the Terms of Service to which each named plaintiff agreed specifically disclaimed any right to uninterrupted service.  (*See* Mot. at 3.)[11]  Moreover, plaintiffs

---

[10] *See also Low v. LinkedIn Corp.*, No. 5:11-cv-01468-LHK, 2011 WL 5509848, at *4 (N.D. Cal. Nov. 11, 2011) (denying standing under Article III for plaintiff's claim that his personal information had independent economic value); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *4-5 (N.D. Cal. Sept. 20, 2011); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW (JCGx), 2011 WL 2473399, at *4-5 (C.D. Cal. Apr. 28, 2011); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 326-27 (E.D.N.Y. 2005).

[11] Plaintiffs devote a large portion of their brief to arguing that the disclaimer of uninterrupted service in the Terms of Service is unconscionable and unenforceable.  (Opp'n at 14-15, 27.)  But

1  have no effective rejoinder to the Northern District of California's recent decision in *Other OS*, in

2  which the court held that PS3 owners could not allege harm to their consoles based on a loss of

3  PSN access.  *See In re Sony PS3 Other OS Litig.*, 828 F. Supp. 2d 1125, 1129-30 (N.D. Cal.

4  2011), *appeal pending*.  Indeed, *Other OS* demonstrates that plaintiffs' argument as to diminution

5  in value and loss of use does not allege a cognizable injury for negligence purposes given that the

6  PSN is a service outside the PS3 product.

7                              c.      **Plaintiffs' Allegations of Negligent Conduct and Breach of Duty**
                                       **Fail to Satisfy *Iqbal*/*Twombly*.**

8

9              Finally, nothing in the opposition rebuts the wholly conclusory nature of the allegations on

10  which the claim of negligence is based.  Pointing by hindsight to the fact that an intrusion

11  occurred does not establish, or permit an inference, that security was not reasonable.  Nor does

12  parroting unidentified commentary from blogs about firewalls make it plausible that a firewall was

13  somehow involved in the intrusion.  *Iqbal* and *Twombly* make clear that plaintiffs cannot proceed

14  with a complaint based on such speculation.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl.*

15  *Corp. v. Twombly*, 550 U.S. 544 (2007).

16             Rather than alleging facts, plaintiffs resort to arguing that the Sony defendants "admitted"

17  their network security failed.  (*See, e.g.*, Opp'n at 8, 10, 16.)  The argument is a makeweight.

18  Plaintiffs attempt to support their assertion by citing to six different paragraphs of their

19  Consolidated Complaint, (*see* Opp'n at 10), but half of these paragraphs do not even contain

20  statements made by a Sony defendant (Compl. ¶¶ 3, 46, 51), and a fourth does not discuss security

21  measures at all (Compl. ¶ 101).  The fifth paragraph contains an alleged quote from a Sony

22  executive that "Sony has 'done everything to bring our practices at least in line with industry

23  standards or better.'"  (Compl. ¶ 85.)  That statement makes no admission.  And, the last

24  paragraph they cite is an excerpt from a blog.  (Compl. ¶ 76.)  Plaintiffs' technique of linking out-

25  of-context phrases with snippets of "commentator" speculation fails to meet the pleading standards

26

27  the disclaimer merely confirms that the named plaintiffs can point to no representation or
    otherwise assert any reasonable expectation that service would be uninterrupted, given that the
    contract describing the terms on which the service was provided expressly disclaimed any such
28  promise.

1  required by *Iqbal* and *Twombly*.

2          **2.    Plaintiffs' Consumer Protection Claims Must be Dismissed.**

3              **a.    Plaintiffs' Claims Under the UCL, FAL, and CLRA Must be Dismissed as to the Non-Resident Named Plaintiffs.**

4

5          The Ninth Circuit held in *Mazza v. American Honda Motor Co.* that for claims sounding in

6  misrepresentation, the governing consumer protection statute is that of the state where the

7  misrepresentation was received.  666 F.3d 581, 593-94 (9th Cir. 2012).  Here, it is admitted that

8  four of the six named plaintiffs received the alleged misrepresentations outside of California

9  (Compl. ¶¶ 9, 12-14); as such, their claims should be dismissed.[12]  Plaintiffs rely on a Central

10  District of California decision holding that *Mazza* does not preclude application of California law

11  if California law does not materially differ from the law of the consumers' home states.  *See Allen*

12  *v. Hylands, Inc.*, No. CV-12-01150-DMG (MANx), 2012 WL 1656750, at *2 (C.D. Cal. May 2,

13  2012).  But, the *Mazza* court held that material differences prevented application of California law

14  to the claims of Florida, Michigan, and Texas plaintiffs, *see Mazza*, 666 F.3d at 587 n.1, 591, the

15  same states in which the non-California named plaintiffs here reside.  (Compl. ¶¶ 9, 12-14.)

16          Plaintiffs further incorrectly contend that the choice of law provision in the SNE Terms of

17  Service Agreement dictates that California law apply even to non-contractual claims relating to

18  their PSN accounts.  The SNE Terms of Service Agreement provides, however, in relevant part:

19          Except as otherwise required by applicable law, **this Agreement** shall be **construed and interpreted** in accordance with the laws of the State of California

20          applying to contracts fully executed and performed within the State of California.

21  (Mot., RJN, Ex. A, 9 (emphasis added).)  By its own terms, the provision dictates only that

22  California law apply to the construction and interpretation of the **contract**, and thus the provision

23  does not apply to plaintiffs' non-contractual claims asserted under the California consumer

24  protection statutes.  *See, e.g.*, *Towantic Energy, L.L.C. v. Gen. Elec. Co.*, No. C 04–00446 JF,

25  2004 WL 1737254, at *5 (N.D. Cal. Aug. 2, 2004) (a provision requiring the contract to be

26

27  [12] *See In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2012 WL 1353057, at *19 n.13 (N.D. Cal. Apr. 18, 2012) (interpreting *Mazza* as "foreclos[ing]" application of California law to non-residents' misrepresentation-based claims); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-

28  02176-LHK, 2012 WL 892427, at *7 & n.2 (N.D. Cal. Mar. 14, 2012) (same).

1    "construed and interpreted" under New York law applied only to construction of the contract).[13]  It

2    is well established that a party advocating the application of a choice of law provision bears the

3    burden of establishing that the claims at issue fall within its scope.  *See Wash. Mut. Bank, FA v.*

4    *Superior Court*, 24 Cal. 4th 906, 916 (2001).  Plaintiffs cannot meet their burden here.

5    Accordingly, the choice of law provision cannot save non-resident plaintiffs' claims under the

6    California consumer protection statutes.

7                    **b.      Plaintiffs Fail to Allege Cognizable Injury Under the UCL,**
                              **FAL, or CLRA.**
8

9            Plaintiffs fail to counter the Sony defendants' argument that allegations of a heightened

10   risk of identity theft, time and money spent on mitigation of that risk, and property value in one's

11   information, do not suffice as injury under the UCL, FAL, and CLRA.  (*See* Opp'n 18-19.)

12   Instead, plaintiffs' sole argument is that they have suffered injury because they purportedly did not

13   receive what they bargained for.  *Id.*  For this, plaintiffs rely principally on *Doe v. AOL LLC*, in

14   which the court held that AOL injured its customers by posting on the internet their highly

15   sensitive personal information, which it had previously agreed not to disclose.  719 F. Supp. 2d

16   1102, 1111 (N.D. Cal. 2010).  But as subsequent decisions have made clear, the *AOL* theory of

17   injury is applicable only where – unlike here – customers have paid for the service at issue.  *See In*

18   *re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714-15 (N.D. Cal. 2011); *In re iPhone*

19   *Application Litig.*, 2011 WL 4403963, at *14.

20           The court's decision in *In re iPhone Application Litigation* is on point.  2011 WL 4403963.

21   There, plaintiffs alleged that the Apple iOS operating system on their iPhones and other devices

22   allowed applications to collect personal information without their consent.  *Id.* at *2.  The court

23   dismissed plaintiffs' UCL and CLRA claims for lack of injury, reasoning that, unlike in *AOL*, the

24   iOS operating system was offered "free of charge."  *Id.* at *14.  The same is true here.  (*See* Mot.,

25   /////

26   _____

27   [13] *See also Narayan v. EGL, Inc.*, 616 F.3d 895, 898-99 (9th Cir. 2010) (citing *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999)) (a provision stating that the contract "shall be interpreted and enforced [according to Texas law]" did not apply to statutory claims); *Benchmark*
28   *Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003).

1    RJN, Ex. A, 1 (PSN service is offered "free of charge").)[14]  In any event, *AOL* is also

2    distinguishable on its facts.  *See In re iPhone Application Litig.*, 2011 WL 4403963, at \*5 (finding

3    *AOL* inapplicable because it involved disclosure to the public of "highly sensitive personal

4    information," including sexuality, mental illness, alcoholism, incest, rape, and domestic violence,

5    and defendant had taken an active role in the disclosure).  Nor is *Lozano* apposite.  *Cf. Lozano v.*

6    *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 722 (9th Cir. 2007) (plaintiffs alleged intentional

7    misallocation of their cellular phone minutes).  Because plaintiffs cannot allege injury under the

8    theory they assert, their claims must be dismissed.

9                    **c.**      **Plaintiffs Fail to Allege a Violation of the UCL, FAL, and**
                                 **CLRA with Sufficient Particularity.**
10

11                   **i.**      **Plaintiffs' Fail to Allege Actual Reliance.**

12          Plaintiffs fail to address the Sony defendants' argument that, while actual reliance is an

13   essential element of any misrepresentation-based claim under the UCL, FAL, and CLRA (and

14   must be pled with particularity under Rule 9(b)), none of the named plaintiffs alleges that he or she

15   read or relied on the misrepresentations at issue.  This omission is fatal to their claims.  *See, e.g.*,

16   *Kwikset v. Super. Ct.*, 51 Cal. 4th 310, 326-27, n.10 (2011).[15]  Moreover, the few facts pled by

17   plaintiffs do nothing but affirm the absence of reliance.  For example, plaintiffs allege they

18   "acquired," rather than purchased, their PS3 consoles,[16] and that they did so ***before*** consenting to

19   ─────────────────────
     [14] To the extent plaintiffs argue that *AOL* should nonetheless apply because they purchased

20   services from third parties, the court in *In re iPhone Application Litigation* held that such
     purchases would be relevant only to claims against those third parties.  2011 WL 4403963, at \*14.

21   To the extent plaintiffs argue that payments for their consoles suffice, plaintiffs concede that none
     of the named plaintiffs alleges purchasing a console (Opp'n at 9 & n.5), and in any event, the

22   purchase would be for the console product, not the PSN service.  *Cf. In re iPhone Application*
     *Litig.*, 2011 WL 4403963, at \*14 (dismissing plaintiffs' claims because the iOS software was free,

23   even though it operated on iPhone and iPad products); *In re Sony PS3 Other OS Litig.*, 828 F.
     Supp. 2d 1125, 1129-30 (N.D. Cal. 2011) (PSN is a service that is "outside the [PS3] device");

24   (*see also* Compl. ¶¶ 4, 9-14, 40 (plaintiffs had to enter into a separate transaction in order to obtain
     access to the PSN)).

25   [15] *See also Garcia v. Sony Computer Entm't Am., LLC*, --- F. Supp. 2d ---, 2012 WL 1610615, at

26   \*5, 7-8 & n.6 (N.D. Cal. May 8, 2012); *Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 WL 476688,
     at \*5 (S.D. Cal. Feb. 9, 2010); *Cattie*, 504 F. Supp. 2d at 946; *Laster v. T-Mobile USA, Inc.*, 407 F.

27   Supp. 2d 1181, 1194 (S.D. Cal. 2005); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-
     64 (2010).

28   [16] Plaintiffs assert on page 22 of their opposition that "[p]laintiffs allege they purchased their

                                                   -10-

1   the user agreements containing the alleged misrepresentations.  (Compl. ¶¶ 9-14.)

2          Plaintiffs argue that under the California Supreme Court's decision in *In re Tobacco II*

3   *Cases*, they are not required "to plead with an unrealistic degree of specificity that the plaintiff

4   relied on particular advertisements or statements."  46 Cal. 4th 298, 328 (2009).  But the court in

5   *Tobacco II* did not relieve plaintiffs of their burden to allege actual reliance.  Rather, the court held

6   only that where plaintiffs allege "exposure to a long-term advertising campaign," they need not

7   identify the particular advertisements that induced them to make their purchases.  *Id.*  Here,

8   plaintiffs do not allege a long-term advertising campaign *or* reliance on any representation,

9   making *Tobacco II* inapposite.[17]

10          Plaintiffs also assert that reliance can be presumed where a misrepresentation or omission

11   is material.  (Opp'n at 22.)  But no presumption is applicable here.  As an initial matter, plaintiffs

12   rely on two cases, *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) and *Mass. Mut. Life Ins. Co. v.*

13   *Superior Court*, 97 Cal. App. 4th 1282 (2002).  Both cases, however, predate the California

14   Legislature's amendment to the UCL and FAL requiring actual reliance.  *See Kwikset*, 51 Cal. 4th

15   at 326.

16          More recent precedent has made clear that the named plaintiffs must allege they actually

17   were exposed to and relied on the alleged misrepresentations in order to state a claim.  *See, e.g.*,

18   *Kwikset*, 51 Cal. 4th at 327 n.10 ("[A] UCL fraud plaintiff must allege he or she was motivated to

19   act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the

20   fact that it was made."); *see also Garcia*, 2012 WL 1610615, at *5, 7-8 & n.6 (dismissing UCL

21   and CLRA claims where plaintiff did not specifically allege that he relied on or was aware of the

22   alleged misrepresentations when purchasing his PS3 and related products); *Ehrlich v. BMW of*

23   ――――――――――――――――――――――――――――――――――――――――――――――――

24   consoles"; however, in the Consolidated Complaint, the named plaintiffs make no such allegation
     (Compl. ¶¶ 9-14) and, contrary to plaintiffs' position, the absence of such an allegation was
25   considered material by the court in *Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011).
     [17] Plaintiffs simply could not allege they were exposed to a long-term advertising campaign under
26   prevailing California law.  *See Mazza*, 666 F.3d at 596 (holding that a print and television
     advertising campaign spanning more than two years was not analogous to the "decades-long"
27   campaign found in *In re Tobacco II*); *Johns*, 2010 WL 476688, at *5 (finding that a plaintiff did
     not allege exposure to a long-term advertising campaign where he alleged specific
28   misrepresentations).

1   *North Am., LLC*, 801 F. Supp. 2d 908, 919-20 (C.D. Cal. 2010) (dismissing UCL and CLRA

2   claims, because plaintiffs failed to allege they relied on the omitted information); *Johns*, 2010 WL

3   476688, at *5; *Cattie*, 504 F. Supp. 2d at 946-47; *Laster*, 407 F. Supp. 2d at 1194.

4          Finally, while plaintiffs contend that allegations of actual reliance are not required for their

5   claims under the UCL's "unlawful" and "unfairness" prongs, the California Supreme Court has

6   held that it is the "theory of the case" that determines the causal requirement, not the prong under

7   which the claim is brought.  *Kwikset*, 51 Cal. 4th at 327 n.9; *see also Durell*, 183 Cal. App. 4th at

8   1363-65.  Where as here the claim is based on alleged deception, reliance is required.  *Kwikset*, 51

9   Cal. 4th at 327 ("[R]eliance is the causal mechanism of fraud[.]"); *Durell*, 183 Cal. App. 4th at

10   1363-64.  The named plaintiffs rely on a misrepresentation or omission theory for all their UCL

11   claims, including those brought under the "unlawful" and "unfairness" prongs.  (*See, e.g.*, Compl.

12   ¶ 124 ("Sony's acts, omissions, and misrepresentations as alleged herein were unlawful . . . .");

13   Compl. ¶ 125 ("Sony's actions also constitute 'unfair' business acts or practices because . . .

14   Defendants omitted material facts regarding its Network . . . .").)  Accordingly, all of plaintiffs'

15   claims under the UCL, FAL, and CLRA should be dismissed for failure to allege reliance.[18]

16                         **ii.    Plaintiffs Fail to Allege that Defendants Made Any**
                                **Statements Likely to Deceive.**
17

18          Plaintiffs fail to allege that defendants made any representation likely to deceive a

19   reasonable consumer.  California courts have granted dismissal where the alleged

20   misrepresentation was not deceptive as a matter of law.  *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d

21   285, 289-90 (9th Cir. 1995); *see also Berry v. Webloyalty.com, Inc.*, No. 10-CV-1358-H (CAB),

22   2011 WL 1375665, at *6-7 (S.D. Cal. Apr. 11, 2011); *McKinniss v. Gen. Mills, Inc.*, No. CV 07-

23   2521 GAF (FMOx), 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007).  Plaintiffs argue that

24   _____

25   [18] Additionally, to the extent plaintiffs premise their consumer protection statute claims on the
     allegation that defendants failed to "immediately notify Plaintiffs and the other Class members" of

26   the intrusion, those claims fail because plaintiffs do not allege that the alleged delay caused their
     injury.  *See infra* at p. 17.  Nor do they sufficiently allege a violation of the California Database

27   Breach Act to constitute an unlawful or unfair business practice.  *See infra* at p. 16-18; *Durell*, 183
     Cal. App. 4th at 1366 (holding that "unfairness" prong claims under the UCL must be tethered to

28   some specific provision of law).

1    SCE and SNE deceived consumers by representing that PS3s and PSPs "could access the PSN

2    online services" and "would be able to connect to" other services.  (Opp'n at 20.)  Yet plaintiffs

3    concede their consoles were able to do both.  (*Id.* ("[P]laintiffs do not allege that the PSPs and

4    PS3s were never capable of accessing the PSN and other online services."); *see also* Compl. ¶¶ 9-

5    14.)  As such, there is no factual dispute that the consoles provided the access and connectivity

6    that was represented.

7          Plaintiffs instead claim deception based on a one time, temporary interruption in PSN

8    service.  Plaintiffs do not allege that the interruption was due to any defect in their consoles, but

9    only that the PSN, a service "outside the actual device," was temporarily unavailable.  *See In re*

10   *Sony PS3 Other OS Litig.*, 828 F. Supp. 2d at 1129-30.  Moreover, to allege deception based on an

11   interruption in service, plaintiffs would have to allege a representation that service would be

12   uninterrupted.  They make no such allegation here.  Indeed, SNE explicitly disclaimed any

13   warranty of uninterrupted access in the PSN Terms of Service.  The Court need not even reach this

14   disclaimer, however, given plaintiffs' failure to identify any misleading representation.

15         Plaintiffs also allege that SNE deceived consumers by representing in its Privacy Policy

16   that it would take "reasonable measures" to protect PSN accountholder information, and by failing

17   to disclose that the PSN had inadequate security.  But courts have held that in the presence of

18   clear, admonitory language such as in the Privacy Policy, no reasonable consumer would be

19   deceived.  (*See* Mot. at 3 (comparing the alleged misrepresentation regarding "reasonable"

20   security measures with the express disclaimer); Mot., RJN, Ex. B, 6.)  *See, e.g.*, *Freeman*, 68 F.3d

21   at 289-90; *Berry*, 2011 WL 1375665, at *6-7.[19]  Plaintiffs attempt to distinguish *Freeman* based

22   on the proximity of the representations to the disclaimers, but here, the admonitory language

23   immediately precedes that quoted by plaintiffs.  (*See* Mot., RJN, Ex. A, 9.)

24         Finally, plaintiffs' claims also fail because they do not allege that the representations were

25   deceptive when made.  *See In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection*

26   *HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1092-93 (S.D. Cal. 2010).  The named plaintiffs

27   _____

28   [19]*See also Baltazar v. Apple, Inc*., No. CV-10-3231-WHA, 2011 WL 6747884, at *4-5 (N.D. Cal. Dec. 22, 2011).

-13-

1   allege that they were induced to acquire their consoles more than two years before the intrusion,

2   but claim no inability to access the PSN during that time.  Similarly, named plaintiffs do not allege

3   any facts that suggest the Sony defendants had inadequate security at the time they acquired their

4   consoles.  *See Garcia*, 2012 WL 1610615, at *5-8 (dismissing claims of inducement under the

5   UCL and CLRA because the plaintiff alleged a defect in his PS3 console that manifested only

6   years after his purchase).  Plaintiffs have failed to allege deception, and their claims must be

7   dismissed.

8           **d.       Plaintiffs' UCL and FAL Claims Also Fail for Lack of Any**
            **Basis for Restitution or Injunctive Relief.**
9

10          Plaintiffs fail to establish any entitlement to restitution or injunctive relief – the only

11   remedies available to a UCL and FAL claimant.  *See Korea Supply Co. v. Lockheed Martin Corp.*,

12   29 Cal. 4th 1134, 1144-46 (2003).  Plaintiffs' arguments as to restitution focus solely on whether

13   plaintiffs have a "vested interest" in the use of Sony's online services, third party services, and

14   PS3 devices.  (Opp'n at 23.)  But this is beside the point.  As this Court has recognized, "[c]ase

15   law is clear that the loss of use and loss of value . . . are not recoverable as restitution because they

16   provide no corresponding gain to a defendant."  *Wofford v. Apple, Inc.*, No. 11-cv-0034-AJB

17   (NLS), 2011 WL 5445054, at *3 (S.D. Cal. Nov. 9, 2011);[20] *see also Kwikset*, 51 Cal. 4th at 335-

18   36.  Indeed, none of the cases cited by plaintiffs involved restitution for loss of use.  *See Lozano*,

19   504 F.3d at 722 (plaintiffs sought restitution of property in the form of monthly cellular phone

20   minutes purchased from defendant); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098,

21   1105 (N.D. Cal. 2007) (plaintiffs sought restitution of funds allegedly overpaid for prescription

22   drugs); *Trew v. Volvo Cars*, No. CIV-S-051379-DFL (PAN), 2006 WL 306904, at *3 (E.D. Cal.

23   Feb. 8, 2006) (plaintiffs sought restitution of monies paid for car repairs).  Plaintiffs concede that

24   any payments for third party services were made to third parties; therefore, such payments cannot

25   

_____

26   [20] This Court ultimately held in *Wofford* that plaintiffs had sufficiently alleged in their second
     amended complaint a benefit to the defendant from a "loss of use," but did so only because
     plaintiffs alleged that the permanent impairment to plaintiffs' phones was an intentional act
27   calculated to motivate plaintiffs to purchase additional products from the defendant.  *See Wofford
     v. Apple, Inc.*, No. 11-CV-0034-AJB (NLS), 2012 WL 1431216, at *3 (S.D. Cal. Apr. 25, 2012).
28   Plaintiffs make no similar allegations here.

1  support a claim of restitution.  *See Sanbrook v. Office Depot, Inc.*, No. C-07-05938-RMW, 2008

2  WL 1994884, at *5 (N.D. Cal. May 5, 2008) (plaintiffs could not seek restitution of payments

3  made to repair a product sold by defendant, because the payments were made to a third party).[21]

4  Further, none of the named plaintiffs alleges having purchased any premium PSN service, and in

5  any event, plaintiffs concede they were eligible for one month of free premium services (*see*

6  Opp'n at 19 n.21), offsetting any claimed loss of one month of those same services.[22]

7         As to injunctive relief, plaintiffs' argue only that they are entitled to it because they were

8  injured.  (Opp'n at 23.)  They do not specify the relief they seek, or even the basis on which they

9  seek it.  This is plainly insufficient.  Because plaintiffs are not entitled to either form of relief

10  available under the statute, plaintiffs' UCL and FAL claims must be dismissed.  *See Wofford*,

11  2011 WL 5445054, at *3.

12                     **e.       The CLRA is Also Inapplicable to the Transactions at Issue.**

13         The PSN is neither a "good" nor a "service" under the CLRA (*see* Mot. at 24-25), and

14  plaintiffs fail to argue otherwise in their opposition.  On this basis alone, their CLRA claim should

15  be dismissed.  Additionally, for the CLRA to apply, plaintiffs must allege a sale or lease of the

16  allegedly defective goods or services, but here they allege neither.  The PSN is a free service, and

17  none of the named plaintiffs allege in the Consolidated Complaint having purchased a PS3 console

18  (Opp'n at 9 & n.5) or paid for any PSN premium service (*see* Compl. ¶¶ 9-14).  This Court has

19

20  [21] The cases cited by plaintiffs are factually inapposite.  *Cf. Ditropan*, 529 F. Supp. 2d at 1105
    (plaintiffs alleged that the company they sent payments to was an intermediary for the defendants);

21  *Trew*, 2006 WL 306904, at *3 (plaintiffs alleged that their repair costs were passed on indirectly to
    the defendant, because it was the sole supplier of the defective part).

22  [22] *See Sanbrook*, 2008 WL 1994884, at *5 (dismissing plaintiffs' UCL claim where the defendants
    had reimbursed the plaintiff for her purchase price); *cf. Berry*, 2011 WL 1375665, at *9

23  (dismissing a claim for restitution under an unjust enrichment theory, in part, because the
    defendant had refunded the fees at issue); *see also In re Hannaford Bros. Co. Customer Data Sec.*

24  *Breach Litig.*, 613 F. Supp. 2d 108, 133-34 (D. Me. 2009) (holding that plaintiffs' claims for
    unauthorized credit card charges could survive only to the extent each plaintiff alleged that the

25  charge had not been reimbursed), *aff'd in part, and rev'd in part on other grounds*, *Anderson v.*
    *Hannaford Bros., Co.*, 659 F.3d 151 (1st Cir. 2011).  *Lozano* is inapposite because in that case

26  there was a dispute about reimbursement for cellular phone minutes, 504 F.3d at 722, while here,
    plaintiffs do not and cannot dispute that they were eligible to receive a month of free premium

27  services.

28

                                                -15-

1    previously rejected attempts to bring a free product within the purview of the CLRA merely by

2    alleging they purchased some related product through a separate transaction.  *Wofford*, 2011 WL

3    5445054, at *2.  The named plaintiffs argue that the CLRA should apply because the Sony

4    defendants "designed, developed, and marketed" the PS3 and PSN as working together (Opp'n at

5    23), but their argument is unavailing, since they fail to draw any meaningful distinction between

6    the PS3 and PSN and the iPhones and iOS software at issue in *Wofford*.  Indeed, the lack of

7    applicability of the CLRA is even clearer here than in *Wofford*, as the PS3 does not require access

8    to the PSN in order to function.[23]

9            **3.    Plaintiffs Fail to State a Claim Under the California Database Breach Act.**

10           **a.    No Statutory "Personal Information" is Alleged.**

11

12           There is no dispute that the Breach Act applies only if the intrusion caused the exposure of

13    an "[a]ccount number, credit or debit card number, ***in combination with any required security***

14    ***code, access code, or password that would permit access to an individual's financial account***."

15    Cal. Civ. Code § 1798.81.5(d)(1)(C) (emphasis added); *see also* Cal. Civ. Code § 1798.82(h)(3);

16    (*see* Opp'n at 25).  Plaintiffs concede that no financial account passwords were exposed.  Plaintiffs

17    attempt to circumvent this requirement, however, by arguing that it is supposedly "well recognized

18    in the online privacy community" that consumers use online network and financial account

19    passwords interchangeably.  (Opp'n at 25.)  The named plaintiffs cite no support for this

20    proposition, and nowhere is it alleged in the Consolidated Complaint.  Further, if it were

21    sufficient, as plaintiffs contend, to allege exposure of ***any*** password, the statutory language "that

22    would permit access to an individual's financial account" would be rendered a mere surplusage, in

23    violation of basic concepts of statutory construction.  *See Klein v. United States*, 50 Cal. 4th 68, 80

24    (2010) ("[C]ourts must strive to give meaning to every word in a statute and to avoid constructions

---

25    [23] Plaintiffs assert that named plaintiff Johnson filed the notice and affidavit required to state a
26    claim under the CLRA, but they do not dispute that he was the only named plaintiff to do so.  As
       such, the CLRA claims of all other named plaintiffs should be dismissed on this ground as well.
27    *See In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D.
       Cal. 2011) (requiring "strict adherence" to the procedural notice provisions of the CLRA); *Laster*,
28    407 F. Supp. 2d at 1195.

-16-

1  that render words, phrases, or clauses superfluous.").  Because the named plaintiffs have failed to

2  allege the exposure of "Personal Information" within the meaning of the Breach Act, the Act

3  simply does not apply.

4             **b.      Plaintiffs Fail to Allege that They Were "Injured."**

5        Plaintiffs also fail to allege any injury caused by SNE's purported nine-day "delay" in

6  notifying customers.  *See* Cal. Civ. Code § 1798.84(b) (providing a cause of action only for

7  "customer[s] injured by a violation" of the statute).  Plaintiffs state that they were unable to obtain

8  credit protection services during that time.  (Opp'n at 25.)  But none of the plaintiffs alleges that

9  he or she incurred a fraudulent charge during those nine days, or was otherwise harmed.  And

10 while plaintiffs argue that their allegations as to "economic damages" from the intrusion are

11 sufficient (Opp'n at 25), they do not even try to tie such "injuries" to the purported delay in

12 receiving notice.  Because plaintiffs have failed to allege that they were "injured by" a violation of

13 the statute, plaintiffs' claims should be dismissed.

14             **c.      Plaintiffs Fail to Allege a Violation of the Statute.**

15       The sole basis for plaintiffs' claim that SNE violated the Breach Act is that SNE allegedly

16 made its initial discovery of the intrusion nine days before notifying customers.  This is plainly

17 insufficient.  The Breach Act provides that disclosures "shall be made in the most expedient time

18 possible and without unreasonable delay, ***consistent with . . . any measures necessary to***

19 ***determine the scope of the breach and restore the reasonable integrity of the system***."  Cal. Civ.

20 Code § 1798.82(a) (emphasis added).  Plaintiffs' own allegations indicate that SNE was

21 investigating the scope of the breach and the integrity of its systems during the nine-day period.

22 (Compl. ¶¶ 54-56, 59.)  Indeed, plaintiffs do not dispute that SNE's conduct complied with best

23 practices guidance of an agency administering the statute, but ask the Court to ignore that

24 guidance – which the Court should not do.[24]

---

25 [24] The report containing the guidance is authored by the state agency that oversees administration
    of the Act, and is publicly available on their webpage.  *See, e.g.*, *Lamle v. City of Santa Monica*,
26 No. CV 04-6355, 2010 WL 3734868, at *5 (C.D. Cal. July 23, 2010) (holding that courts may take
    notice of agency reports available on a government webpage); *County of Santa Clara v. Astra*
27 *USA, Inc.*, C 05-03740, 2008 WL 5055395, at *2 n.1 (N.D. Cal. Nov. 25, 2008) (taking notice of
    federal agency guidance available on its webpage).  As such, there is no reason it should not be
28 considered when construing the statute.

**d.**   <u>**Non-Resident Plaintiffs Have No Claim Under the Statute.**</u>

Finally, plaintiffs assert that the Breach Act provides a claim to all plaintiffs regardless of residency, because California Civil Code § 1798.84(b) states that "any customer injured by a violation of [the Breach Act] may institute a civil action to recover damages." But this argument ignores the fact that the Breach Act requires disclosure only to "resident[s] of California." *See* Cal. Civ. Code § 1798.82(a). Further, the statute makes clear its legislative purpose: "It is the intent of the legislature to ensure that personal information about ***California residents*** is protected." Cal. Civ. Code § 1798.81.5(a) (emphasis added). Accordingly, plaintiffs' claim should be dismissed as to the non-resident named plaintiffs.

**4.**   <u>**Plaintiffs Fail to State a Claim for Unjust Enrichment.**</u>

Plaintiffs assert that unjust enrichment is recognized by some courts in certain circumstances as providing an action in quasi-contract, but they simply cannot get around the fact that this Court is not among them. *See, e.g.*, *Klein Elecs., Inc. v. Boxwave Corp.*, No. 10-CV-2197-WQH (POR), 2011 WL 2560238, at*5 (S.D. Cal. June 27, 2011) (recognizing split in authority and holding that this Court does not recognize any such claim); *Johns*, 2010 WL 476688, at *6 (same); *see also Stanley v. Bayer Healthcare LLC*, No. 11-CV-0862-IEG (BLM), 2012 WL 1132920, at *11 (S.D. Cal. Apr. 3, 2012).

Additionally, plaintiffs cannot bring a claim for unjust enrichment where there is an express contract between the parties. *See, e.g.*, *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Plaintiffs argue that they fall within an exception to this rule, because they have challenged the enforceability of certain provisions in the Terms of Service. But the cases relied on by plaintiffs involve allegations that there was no contract at all. *See In re Apple In-App Purchase Litig.*, --- F. Supp. 2d ---, No. 11-CV-1758-EJD, 2012 WL 1123548, *4, 9 (N.D. Cal. Mar. 31, 2012) (plaintiffs disputed whether the contract applied to their minor children); *Oracle Corp. v. SAP AG*, No. 07-1658-PJH, 2008 WL 5234260, at *6-9 (N.D. Cal. Dec. 15, 2008) (plaintiffs alleged that the contract, by its own terms, did not apply to them). Here, plaintiffs assert only that certain disclaimers are unenforceable, and, in fact, rely heavily on other

/////

-18-

1   provisions of the contract in their Consolidated Complaint and throughout their opposition.  (*See,*

2   *e.g.*, Opp'n at 17.)[25]

3          Finally, plaintiffs fail to identify any benefit that defendants have retained at their expense.

4   Access to the PSN is offered free of charge (Mot., RJN, Ex. A, 1) and named plaintiffs have not

5   alleged that they purchased their consoles[26] or that payments for third party services were made to

6   the Sony defendants, *see supra* at p. 14-15.   Named plaintiffs also do not allege that they

7   purchased any premium PSN service, and in any event, they concede that they were offered free

8   premium services matching the duration of any temporary suspension of service.  *See supra* at p.

9   15 n.22.  For these reasons, plaintiffs have failed to allege sufficient facts to state any plausible

10  claims for unjust enrichment.

11       **5.**     **Plaintiffs' Claim For Bailment Must Be Dismissed.**

12         Plaintiffs cite no case in which a court has held that a consumer creates a bailment by

13  providing personal information to another.[27]  As explained in defendants' principal brief, the

---

14  [25] Plaintiffs' arguments on unenforceability are unavailing, because they allege neither procedural
    nor substantive unconscionability, and *both* are required.  *In re iPhone Application Litig.*, 2011

15  WL 4403963, at *7 (citing *Armendariz v. Found. Health Psychcare Servs. Inc.,* 24 Cal. 4th 83,
    114 (2000)).  Plaintiffs fail to allege procedural unconscionability because they allege no facts

16  indicating that defendants engaged in "oppression, surprise, or overly-harsh conduct."  *Dorado v.
    Shea Homes Ltd. P'ship,* No. 11-CV-01027 OWW SKO, 2011 WL 3875626, at *8 (E.D. Cal.

17  Aug. 31, 2011).  In any event, agreements concerning non-essential, recreational activities are ***not***
    procedurally unconscionable, even where they are technically contracts of adhesion.  *See, e.g., In*

18  *re iPhone Application Litig.*, 2011 WL 4403963, at *8.  Plaintiffs fail to establish substantive
    unconscionability because they provide no basis for asserting that SNE "shock[s] the conscience"

19  merely by the fact that it does not promise uninterrupted access to a free network service.  *See*
    *Aron v. U-Haul Co. of Cal*., 143 Cal. App. 4th 796, 809 (2006).  Plaintiffs' argument that the

20  damages limitation provision "fails of its essential purpose" is similarly flawed, because they
    allege no circumstance indicating that they were denied a remedy for which they contracted.  *See,*

21  *e.g.*, *O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995); *Airlift Int'l v. McDonnell Douglas*
    *Corp.*, 685 F.2d 267, 270 (9th Cir. 1982), *abrogated on other grounds by Matter of McLinn*, 739

22  F.2d 1395, 1403 (9th Cir. 1984).  Accordingly, plaintiffs should be "held to [their] bargain."
    *Airlift*, 685 F.2d at 270.

23  [26] Even if plaintiffs had alleged in their Consolidated Complaint that they had "purchased" their
    consoles, that allegation would be insufficient to state a claim for at least two reasons: (1) they

24  point to no promise or representation regarding uninterrupted PSN access or security upon which
    they relied when acquiring their PS3 consoles, and (2) the Terms of Service and Privacy Policy to

25  which they cite were made available only after their acquisition of the consoles (Compl. ¶¶ 9-14),
    and in any event, contain an express disclaimer of uninterrupted service.  On top of this, as Judge

26  Seeborg has held, the PSN service is "outside" of the PS3 device.  *See In re Sony PS3 Other OS*
    *Litig.*, 828 F. Supp. 2d at 1129-30.

27  [27] Plaintiffs' reliance on *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) is misplaced, as
    exclusive ownership of intangible and intellectual property, such as a domain name (*i.e.*, website

28  address), is wholly distinct from an alleged property interest in one's own name.

1  courts have flatly rejected such a theory. *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D.

2  Cal. 2008); *Richardson v. DSW, Inc.*, No. 05-C4599, 2005 WL 2978755, at *4 (N.D. Ill. Nov. 3,

3  2005). To hold otherwise would stretch the common law far beyond its intended purpose,

4  imposing a bailment each time a company collects information from a registrant for services.

5  Plaintiffs argue that a bailment need not involve return of the property being bailed, but their

6  citation to a criminal appellate decision from 1857 – which has since been overruled, *see People v.*

7  *Poggi*, 19 Cal. 600 (1862) – provides no basis for finding a bailment here. Moreover, a "return" is

8  precisely the theory advanced by plaintiffs (Opp'n at 29 ("[T]he reasonable expectation was for

9  Sony to 'return' [plaintiffs'] Personal Information.").) For these reasons, plaintiffs' claim for

10  bailment should be dismissed.

11  **III.    CONCLUSION**

12       For the reasons set forth herein and in their opening brief, the Sony defendants respectfully

13  request that the Court dismiss the Consolidated Complaint in its entirety with prejudice.

14

15  Dated: June 13, 2012                    Respectfully submitted,

16                                   ROPES & GRAY LLP

17                                   By *s/*Harvey J. Wolkoff
                                    HARVEY J. WOLKOFF

18                                      MARK P. SZPAK

19                                      WILLIAM S. BOGGS
                                    AMANDA C. FITZSIMMONS

20                                      DLA PIPER LLP (US)

21                                      Attorneys for Defendants
                                    SONY COMPUTER ENTERTAINMENT

22                                      AMERICA LLC, SONY NETWORK
                                    ENTERTAINMENT INTERNATIONAL LLC,

23                                      SONY NETWORK ENTERTAINMENT
                                    AMERICA INC., SONY ONLINE

24                                      ENTERTAINMENT LLC, SONY
                                    CORPORATION OF AMERICA

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed June 13, 2012.


By  *s/* Harvey J. Wolkoff
HARVEY J. WOLKOFF

ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
Tel:  (617) 951-7000
Fax:  (617) 951-7500
Email: harvey.wolkoff@ropesgray.com

CASE NO. 11-md-2258 AJB (MDD)