STRANGE & CARPENTER
BRIAN R. STRANGE (103252)
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
(310) 826-3210 (fax)

LAW OFFICES OF DAVID A. MCKAY
  LLC
DAVID A. MCKAY
555 North Point Center East, Suite 400
Alpharetta, Georgia 30022
(678) 366-5180
(678) 366-5001 (fax)

GRANT & EISENHOFER, P.A.
ADAM J. LEVITT
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000
(312) 214-0001 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 E. Palmetto Park Rd, Suite 500
Boca Raton, Florida 33432
(561) 750-3000
(561) 750-3364 (fax)

BARNOW AND ASSOCIATES,
  P.C.
BEN BARNOW
One North LaSalle Street ,Suite 4600
Chicago, Illinois 60602
(312) 621-2000
(312) 641-5504 (fax)

*Plaintiffs' Steering Committee*

BLOOD HURST & O'REARDON,
LLP
TIMOTHY G. BLOOD (149343)
701 B Street, Suite 1700
San Diego, California  92101
(619) 338-1100
(619) 338-1101 (fax)

CASEY GERRY SCHENK
FRANCAVILLA BLATT
  & PENFIELD LLP
GAYLE M. BLATT
110 Laurel Street
San Diego, California 92101
(619) 238-1811
(619) 544-9232 (fax)

*Plaintiffs' Co-Liaison Counsel*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| In re:<br><br>SONY GAMING<br>NETWORKSAND CUSTOMER<br>DATA SECURITY BREACH<br>LITIGATION<br>———————————————<br><br>THIS DOCUMENT PERTAINS TO:<br>ALL ACTIONS<br>——————————————— | MDL No.:3:11-md-02258-AJB-MDD<br><br>CLASS ACTION<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* MOTION FOR CLARIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT<br><br>Judge:   Hon. Anthony J. Battaglia<br>Ctrm:    3B, Third Floor - Schwartz |

Case No. 3:11-md-02258-AJB-MDD

OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR CLARIFICATION

1

## I.    Introduction

2    Defendants – through an inappropriate *ex parte* motion that Defendants

3 call a "Motion for Clarification" – seek entry of judgment pursuant to Fed. R.

4 Civ. Proc. 54(b) dismissing Plaintiffs' California Unfair Competition Law

5 ("UCL") and False Advertising Law ("FAL") claims (Doc. No. 169, the

6 "Motion").  Defendants' Motion should be denied because it is both procedurally

7 and substantively improper.

8    First, Defendants' attempt to seek Fed. R. Civ. Proc. 54(b) judgment *ex*

9 *parte* is procedurally improper.  Defendants do not seek emergency relief and no

10 irreparable harm will result if Defendants follow the ordinary rules for bringing a

11 motion for reconsideration of this Court's Order Granting in Part and Denying in

12 Part Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated

13 Class Action Complaint (Doc. No. 168, the "Order").  Furthermore, Defendants'

14 *ex parte* Motion raises issues that they failed to previously raise and that are

15 complex and nuanced.  It is unfair to Plaintiffs and the Class to force them into a

16 hurried response to the issues Defendants raise in a cursory manner through their

17 *ex parte* Motion.

18    Second, Defendants' Motion is substantively incorrect.  This Court clearly

19 held that Plaintiffs' "UCL and FAL Claims based on misrepresentations and

20 omissions regarding reasonable network security and industry-standard

21 encryption and Plaintiffs' ability to seek restitution under the statutes" had

22 "survived dismissal and may proceed[.]"  *See* Order at 97.  This holding is

23 supported by the facts Plaintiffs' alleged in their First Amended Consolidated

24 Class Action Complaint, (Doc. No. 128, "FAC"), as well as by applicable law.

25 Defendants' Motion contends that this Court should separate the PSN from the

26 Consoles through which it is accessed in its analysis of Plaintiffs' UCL and FAL

27 claims; but that is *precisely the opposite* of what this Court did when it held that

28 "because Plaintiffs have alleged that Sony omitted material information

regarding the security of Sony Online Services, and that this information should have been disclosed to consumers at the time consumers purchased their Consoles, the Court finds Plaintiffs have sufficiently alleged a loss of money or property 'as a result' of Sony's alleged unfair business practices."  Order at 55 (citations omitted); *see also* Order at 61 ("[A]s acknowledged above, the FACC now alleges liability under the CLRA based on omissions that occurred at the point of purchase of Plaintiffs' consoles.  Therefore, although the Court still finds Plaintiffs' CLRA claim cannot proceed based on affirmative misrepresentations, because those relate solely to the PSN, **the CLRA claim may proceed on the basis that Sony omitted material information regarding the security of the PSN at the time Plaintiffs purchased their Consoles.**") (citations omitted, emphasis added).  In addition, Defendants request that judgment be entered in its favor on Plaintiffs' UCL and FAL claims, in their entirety, based solely on their challenges of the fraud-based aspects of those claims.  As they did in both of their dismissal motions, Defendants failed to address the non-fraud aspects of Plaintiffs' UCL and FAL claims, and, in particular, the unfair and unlawful prongs of the UCL.  Plaintiffs' claims for violations of these prongs have never been challenged, and should certainly not be challenged on an *ex parte* basis for "clarification."

## II.    Defendants Fail to Meet the Standard to Obtain *Ex Parte* Relief

This Court permits *ex parte* applications only if they are "appropriate."  U.S. District Judge Civil Case Procedures for the Honorable Anthony J. Battaglia, §III.1.  "Ex parte applications are a form of emergency relief that will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief."  *AF Holdings LLC v. Doe*, No. 12cv01525 LAB(RBB), 2012 U.S. Dist. LEXIS 153680, at *7 (S.D. Cal., Oct. 24, 2012) (citations and quotations omitted).  Simply put, "[e]x parte proceedings are reserved for emergency circumstances."  *Id.* at *8.  "They impose an unnecessary

administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason." *Morales v. Prolease PEO, LLC*, No. 11-CV-10389, 2011 U.S. Dist. LEXIS 147545, at *3 (C.D. Cal. Dec. 22, 2011). The *ex parte* procedure is limited to instances in which "(1) there is the threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion." *Id.* at *3-4.

Here, Defendants offer no basis for *ex parte* relief. They do nothing more than state that they met and conferred before bringing the Motion. Defendants raise complex issues that were not previously raised in an area of law – data breach cases – that has proved to be particularly demanding. Defendants' Motion should thus be denied because it was improperly brought *ex parte*.

**III.    Defendants' Motion for "Clarification" Is Substantively Incorrect**

Defendants' Motion seeks to achieve through "clarification" that on which it failed to achieve when it moved to dismiss in the first instance. As Plaintiffs noted in their opposition to the motion to dismiss, "Sony's Motion obsessively focuses on misrepresentation, ignoring allegations about its obligation arising from other sources to maintain its customers' Personal Information in a safe manner." See Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Consolidated Class Action Complaint (Doc. 146) ("Opposition") at 3. As this Court held, "the FACC now clarifies that Plaintiffs seek restitution based on the fact that Sony benefited financially from the sale of PSPs and PS3s, which was made possible and enhanced by Sony's fraudulent omissions . . . [therefore] Plaintiffs' may be able to recover the purchase price of their Consoles or a portion thereof." Order at 60. Thus, Plaintiffs' theories of restitutionary

recovery under the UCL and FAL based on misrepresentations and omissions survived Defendants' motion to dismiss and may proceed. *See* Order at 97.

In addition, Sony never moved on, and accordingly the Court never addressed, Plaintiffs' other theories of recovery under the UCL and FAL.  For the UCL claim, on behalf of the California Subclass, Plaintiffs' alleged that:

> Sony violated the UCL by failing to take reasonable precautions to protect California Subclass members' Personal Information as alleged.  Further, Sony promised to take "reasonable measures" to protect customers' Personal Information against breaches in security, but failed to do so. In violation of industry standards, Sony used weak or no encryption and failed to adequately install and maintain firewalls, as alleged more fully in this complaint.  Sony was aware of previous attempts to break into its Network but failed to rectify shortcomings in its security systems and technologies that allowed for those breaches and ensuing Data Breach to be successful.  Sony violated consumer expectations to safeguard Personal Information and failed to tell consumers that it did not have reasonable and adequate safeguards in place to protect California Subclass member' Personal Information.

FAC at ¶149.

Plaintiffs also alleged the Sony Defendants violated the UCL by violating "its own Privacy Policy." *Id*. at 153.  The Privacy Policy is described in the FAC and its various contractual terms are quoted. *See*, *e.g.*, FAC at ¶¶56-61.  A systematic breach of a contractual promise constitutes a violation of the UCL. *Smith v. Wells Fargo Bank, N.A*., 135 Cal. App. 4th 1463, 1483 (2005); *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996).  Defendants never moved to dismiss this aspect of the UCL claim.

Moreover, the Court did not, as the Defendants' urge in their *ex parte* application, "recognize that the PSN is free" in all circumstances.  Rather this Court recognized that the PSN, and Sony's obligation provide reasonable security measures in connection therewith, plays a part in the purchase price of the Consoles. *See* Order at 60-61.  Furthermore, Plaintiffs have consistently alleged that Class Members paid an additional price to access the PSN – they provided a treasure trove of personal data that the Defendants' use for their

business purposes.  Providing this information provided part of the consideration for access to the PSN.  "For their own commercial and financial benefit, defendants solicited and collected their customers' sensitive personal and financial information, including credit and debit card numbers."  FAC at ¶3.  As Plaintiffs alleged:

> At the same time as Sony was saving money by maintaining substandard data security for its Network and for Sony Online Services, Sony was also earning significant amounts of money from Sony Online Services.  Sony provides Sony Online Services to Plaintiffs and the other Class members because it enables Sony to make money from those Class members through increased sales of Sony hardware, increased sales of Sony software, sales of Sony Online Services subscriptions, and sales of Sony Online Services in-game downloads or "add-ons."  Sony did not need to collect Plaintiffs' and the other Class members' Personal Information in the course of making Sony Online Services available to make money in any of these ways – Sony could have continued to sell hardware, software, subscriptions, and downloads without requiring Plaintiffs and the other Class members to personally identify themselves and without recklessly storing their Personal Information as Sony did on Sony's Network.  Sony demanded and kept Plaintiffs' and the other Class members' Personal Information as a condition for accessing Sony Online Services.

FAC at ¶14

As Plaintiffs further alleged:

> One of the key features of the PS3 and PSP devices is their Internet networking capabilities that allow users to connect to the Internet from the devices over a landline connection or "Wi-Fi" – a wireless networking technology allowing the devices to communicate over a wireless signal.  As detailed below, the ability of PS3 consoles to access content from the Internet is a key and important part of Sony's business model.  It does not merely sell gaming consoles.  Instead, Sony's business model is to use the gaming console as a portal to permit PS3 owners to access and pay for content, including games, music and videos, from which Sony and its subsidiaries sell content to its PS3 customers.  Sony also has business contracts with other content providers from which it earns revenue.  Sony then solicits and collects the Personal Information, sets up accounts and makes it easy for its customers to continue to spend money purchasing content.  This aspect of Sony is its most profitable and most valuable.

* * *

> When registering with and/or joining PSN, Qriocity, and/or SOE, users are required to establish an account by providing various

1   Personal Information to Sony, which Sony, in turn, stores and
2   maintains on its Network.

3   FAC at ¶¶40; 49.  Therefore, although Plaintiffs and the other Class Members did

4   not pay cash to access the PSN directly, they paid for their Consoles and they

5   paid with their personal information, which has monetary value to the

6   Defendants and others.  *See also* FAC at ¶¶120-21 (discussing monetary value of

7   personal information).

8   Defendants next assert that for "Plaintiffs' affirmative misrepresentation

9   claims regarding the PSN, the Court held that the Plaintiffs 'cannot plausibly rely

10  on alleged misrepresentations contained within the PSN User Agreement and/or

11  the PSN Privacy Policy' (Order at 54:5-7), which they do not allege having ever

12  read."   Motion at 1-2.   While relevant to Plaintiffs' allegations regarding

13  affirmative misrepresentations made only in the PSN User Agreement and

14  Privacy Policy, this argument is irrelevant to Plaintiffs' misrepresentations and

15  omissions claims at the point of purchase of their Consoles, and is irrelevant to

16  the unfair and unlawful prongs of the UCL.  *Medrazo v. Honda of N. Hollywood*,

17  205 Cal. App. 4th 1, 12 (2012).  Plaintiffs can and did allege that failing to

18  maintain personal information according to accepted minimum standards, both

19  independently and as a breach of a contractual promise, constitutes unfair and

20  unlawful business practices, separate and apart from fraudulent business

21  practices.

22  For the FAL, Plaintiffs alleged they were promised reasonably secure

23  access to the Sony Online Services and that this was an important part of the

24  reason they purchased their Consoles.  *See, e.g.*, FAC at ¶¶163-67.  While the

25  Court is correct in pointing out that the PSN User Agreement and Privacy Policy

26  disclaimed "uninterrupted access," Sony's failure to provide reasonable or

27  industry standard security when Sony "made competing, potentially ambiguous

28

1   representations" states a claim states a claim sufficient to withstand a motion to

2   dismiss.  *See* Order at 58-59.

3       The Court also has not ruled that all interruptions in network access

4   regardless of duration or cause are acceptable or reasonable.  *See* Order at 58-59.

5   Plaintiffs alleged out of pocket losses as a result of sustained interruption:

6   "While Sony Online Services were turned off, Plaintiffs and the other Class

7   Members continued to be charged for prepaid subscriptions to products or

8   services for specified periods of time accessible through the Network, including,

9   but not limited to Netflix, MLB.TV, and NHL Gamecenter LIVE ("Third-Party

10  Services"), despite the inability to use such Third-Party Services."  FAC at ¶17;

11  *see also* FAC at ¶21 (Johnson's inability to access the Netflix subscription

12  service); FAC at ¶22 (Howe's inability to access subscription services and use of

13  purchased "map packs").

14      Defendants' argument in their Motion is illogical because, in their view,

15  Defendants could completely shut down the entire PSN system for weeks or

16  months and would face no liability based on the fact that they disclaimed any

17  right to "uninterrupted" PSN service.  Plaintiffs' FAC properly alleges that they

18  each paid hundreds of dollars for their PS3s precisely because they would have

19  access to the PSN.  *See*, *e.g.*, FAC at ¶17 ("because of its inadequate security and

20  the resulting Data Breach, Sony shut down Sony Online Services for several

21  weeks, causing further damage to Plaintiffs and the other Class members,

22  including the loss of use of Sony Online Services and the full functionality of

23  hardware, including Sony [PS3] consoles and PlayStation Portable ("PSP")

24  devices and related software and games ("Equipment"), as well as "add-ons"

25  Plaintiffs and the other Class members paid Sony money for and could only use

26  when Sony Online Services were, in-fact, on-line. While Sony Online Services

27  were turned off, Plaintiffs and the other Class members continued to be charged

28  for prepaid subscriptions to products or services for specified periods of time

accessible through the Network, including, but not limited to Netflix, MLB.TV, and NHL Gamecenter LIVE . . . .").  While a shutdown of the PSN for few hours or even days would perhaps not lead to liability, it should be up to the jury to decide whether shutting down the entire PSN system for several weeks (or even a few months) constitutes a FAL or UCL violation and caused damages to Plaintiffs and the other Class Members.

**IV.    Conclusion**

For the foregoing reasons, the Defendants' *ex parte* Motion should be denied.

Dated:  February 4, 2014

GRANT & EISENHOFER, PA
ADAM J. LEVITT

By:    *s/ Adam J. Levitt*
            ADAM J. LEVITT

GRANT & EISENHOFER, PA
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000
(312) 214-0001 (fax)
alevitt@gelaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

CASEY    GERRY    SCHENK
FRANCAVILLA    BLATT    &
PENFIELD LLP
GAYLE M. BLATT
110 Laurel Street
San Diego, California 92101
(619) 238-1811
(619) 544-9232 (fax)

***Plaintiffs' Liaison Counsel***

GRANT & EISENHOFER, PA
ADAM J. LEVITT

OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR CLARIFICATION

00069022

1    30 North LaSalle Street, Suite 1200
     Chicago, Illinois 60602
2    (312) 214-0000
     (312) 214-0001 (fax)
3    alevitt@gelaw.com

4    STRANGE & CARPENTER
     BRIAN R. STRANGE
5    12100 Wilshire Boulevard, Suite 1900
     Los Angeles, California 90025
6    (310) 207-5055
     (310) 826-3210 (fax)
7    lacounsel@earthlink.net

8    LAW  OFFICE  OF  DAVID  A.
     MCKAY LLC
9    DAVID A. MCKAY
     555 North Point Center East, Suite 400
10   Alpharetta, Georgia 30022
     (678) 366-5180
11   (678) 366-5001 (fax)
     david@damckaylaw.com
12
     ROBBINS GELLER RUDMAN &
13   DOWD, LLP
     PAUL J. GELLER
14   120 E. Palmetto Park Road, Suite 500
     Boca Raton, Florida 33432
15   (561) 750-3000
     (561) 750-3364 (fax)
16
     BARNOW  AND  ASSOCIATES,
17   P.C.
     BEN BARNOW
18   One North LaSalle Street ,Suite 4600
     Chicago, Illinois 60602
19   (312) 621-2000
     (312) 641-5504 (fax)
20
     *Plaintiffs' Steering Committee*
21

22

23

24

25

26

27

28

00069022    OPPOSITION TO DEFENDANTS' EX PARTE MOTION FOR CLARIFICATION

**CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed February 4, 2014.

_s/ Adam J. Levitt_
ADAM J. LEVITT

GRANT & EISENHOFER
P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
(312) 214-0000
(312) 214-0001 (fax)
alevitt@gelaw.com

00069022